243 F.2d 894
 57-1 USTC P 9576
 320 EAST 47TH STREET CORPORATION, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 194, Docket 24351.
 United States Court of Appeals Second Circuit
 Argued Feb. 5, 1957.
Decided April 10, 1957.
 
 Lester R. Bachner, New York City, for petitioner.
 Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D.C., for respondent.
 
 
 1
 Before CLARK, Chief Judge, MEDINA, Circuit Judge, and SMITH, District judge.
 
 
 2
 J. JOSEPH SMITH, District Judge.
 
 
 3
 Petitioner is a New York corporation whose stock in 1950 was wholly owned by two individuals. In that year the petitioner reported a gross income of $26,871.85. $6,000 of this was received as rental income from a corporation whose shareholders were the same individuals as petitioner's sole shareholders. $20,728.81 was that part of an award denominated 'interest' for the condemnation of petitioner's property by the City of New York in 1948, paid in 1950. The balance, $143.04, was miscellaneous income. After receipt of the award, taxpayer acquired another piece of real property at 215 East 58th Street, New York City. Grosfeld House, Inc., whose shareholders are identical with those of petitioner, commenced occupancy of the premises in October 1950, paying $6,000 as rental during that year. The Commissioner determined that the $20,728.81 item was personal holding company income and that the petitioner was subject to the personal holding company tax imposed by Section 500 of the 1939 Code, 53 Stat. 104, as amended, 26 U.S.C. 500. The petitioner brought suit in the Tax Court contending that the Commissioner's determination as to the $20,728.81 interest item was erroneous, and in the alternative that the $6,000 rental income was not personal holding company income within the meaning of Section 502(g), that accordingly less than 80% of its gross income was personal holding company income, and therefore the petitioner was not subject to the tax imposed by Section 500. The Tax Court held that both items of income were personal holding company income as defined in Section 502(a) and (g), and from this decision the petitioner has brought this appeal. The inclusion of these items within the definition of personal holding company income presents novel questions which must be treated separately.
 
 
 4
 The Tax Court found that so much of the condemnation award denominated 'interest' received by the petitioner was 'interest' within the meaning of Section 502(a) of the 1939 Code:'Dividends, interest (other than interest constituting rent as defined in subsection (g)), royalties (other than mineral, oil, or gas royalties), annuities,'
 
 
 5
 Since there is no claim by petitioner that the interest on the condemnation award would be includible within subsection (g), the basic question on the first point of this appeal is whether the term 'interest,' as generally understood, Old Colony R. Co. v. Com'r, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484, is limited to compensation for use of money voluntarily loaned or whether it also includes compensation for money withheld from the taxpayer without his consent. Only one case has dealt with this problem in the personal holding company area, Vertex Investment Co., 47 B.T.A. 252. There the taxpayer settled with the estate of its deceased president in a suit to recover sums appropriated by the president to his personal use. Part of the settlement was based on interest running from the date of appropriation by the deceased president. The Tax Board reasoned that such compensation was interest within the meaning of Section 502(a) even though it might be strictly regarded as 'damages for detention of money.' However the decision of the Board finally rested on the grounds that the corporation had ratified the 'appropriation' as a 'loan' and thus the compensation for the use of money was held to be interest on that basis. The terms used in Subchapter A of Chapter 2 (Personal Holding Companies) have the same meaning as in Chapter 1 (Income Tax), Section 507, and in that area the meaning of 'interest' has been more extensively determined. Neither the Old Colony R. Co. case, supra, nor Deputy v. du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 appear to be helpful since they deal with the significance of 'interest' as opposed to other types of obligations arising from the voluntary use of money. This is especially true in light of the distinction drawn by the Court in the du Pont case between such interest and interest for the detention or use of money, at page 498, footnote 11. Of more help is Kieselbach v. Com'r, 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358, where the interest on a condemnation award was held to be income as opposed to part of the compensation for the property itself. While the Court, 317 U.S. at page 405, 63 S.Ct. at page 306, refused to express an opinion on whether or not such income would be 'interest' within the meaning of Section 22(a) of the Revenue Act of 1936, 49 Stat. 1657, 26 U.S.C.A.Int.Rev.Acts, page 825, it did analogize such payments to the interest received on a purchase money lien, 317 U.S. at page 403, 63 S.Ct. at page 305. Johnson & Co. v. U.S., 2 Cir., 1945, 149 F.2d 851, carried the Kieselbach rationale to its ultimate conclusion by holding that even though the compensation award, plus the interest, is less than the taxpayer's basis, the 'interest' received was ordinary income and not part of the sale price. If then the so-called 'interest' is not part of the sale price, but is ordinary income, how is it to be characterized under the personal holding company income provisions? Helvering v. Stockholms Enskilda Bank, 1934, 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211, held that interest on a tax refund was interest within the meaning of Section 217(a) of the Revenue Act of 1926, 44 Stat. 9, 26 U.S.C.A.Int.Rev.Acts, page 170, which included in the gross income of a nonresident alien 'interest on bonds, notes, or other interest-bearing obligations.' 'Obviously, an obligation upon which by express statutory direction interest must be paid is an interest-bearing obligation', 293 U.S. at page 86, 55 S.Ct. at page 51. And in United States Trust Co. of New York v. Anderson, 2 Cir., 1933, 65 F.2d 575, 89 A.L.R. 994, and American Viscose Corp. v. Com'r, 3 Cir., 1932, 56 F.2d 1033, the courts experienced no difficulty in characterizing as 'interest,' interest received on land condemnation and tax refunds, respectively, in determining whether such interest payments came within the exemption of Section 213(b)(4) of the Revenue Act of 1926, 44 Stat. 24, 26 U.S.C.A.Int.Rev.Acts, page 164; 'Interest upon (A) the obligations of a State * * * or (C) the obligations of the United States or its possessions.' While these last three cases are persuasive in determining the meaning of 'interest' in Section 502(a) in 1950, they have added significance in that they reflect the accepted meaning of 'interest' in 1934 when the Personal Holding Company surtax was originated.
 
 
 6
 House Report 704 (73rd Congress, 2nd Sess.) found that many wealthy taxpayers were avoiding the surtax on individual income by transferring their securities to corporations formed for that purpose and allowing the income from such securities to accumulate in these corporations subject only to the lower corporate tax rates. To combat this device The Revenue Act of 1934, 48 Stat. 680, imposed a surtax on the undistributed adjusted net income of all corporations having no more than five shareholders if at least 80% of such corporation's gross income was derived from 'royalties, dividends, interest, annuities, and * * * gains from the sale of stocks or securities.' Section 351(b)(1), 26 U.S.C.A.Int.Rev.Acts, page 757. From the inception of this section the terms used were given the same meaning as in the income tax chapter, Section 351(b)(4). Interest received in a land condemnation proceeding would appear to be as much a target of this enactment as dividends or other forms of interest, since such 'interest' payments would have been taxable as ordinary income if paid to the individual. United States Trust Co. of New York v. Anderson, supra. Had such payments been channeled to a corporation, the individual surtax would have been successfully avoided prior to 1934, as would the surtax on dividends and other interest similarly channeled. The fact that petitioner was not formed for the purpose of tax avoidance, and that barring this unusual receipt of income it apparently would not have been a personal holding company within the meaning of Section 501 can have no effect on this issue. O'Sullivan Rubber Co. v. Com'r, 2 Cir., 1941, 120 F.2d 845. We conclude that the amounts required to be paid under state law denominated as interest on the condemnation award from the date of the taking to the date of payment are within the meaning of interest in 502(a) and includible within personal holding company income.
 
 
 7
 But petitioner contends that even if the condemnation interest is personal holding company income it is still not subject to the surtax because less than 80% of its gross income is holding company income. It argues that the $6,000 rental income was erroneously held to be includible under subsection (g), but should be included under subsection (f) and thus be eligible for the exemption provided for by Section 223 of the 1950 Revenue Act, 64 Stat. 947, as amended by the Act of August 11, 1955, 69 Stat. 693, 26 U.S.C.A. § 502 note. Subsection (f) of Section 502 defines as personal holding company income compensation received for the use of corporate property by a holder of 25% or more of that corporation's stock 'whether such right is obtained directly from the corporation or by means of a sublease or other arrangement.' Such compensation is specifically excluded from subsection (g) inclusion. The sole question on this leg of the appeal is whether rental income, received from a lessee corporation, whose shareholders are identical with those of the corporation comes within 'other arrangement' of Section 502(f). The Tax Court in Minnesota Mortuaries, Inc., 4 T.C. 280, held that such income was not includible under (f), reasoning that a lease to a corporation, no matter by whom owned, cannot give 'the use of, or the right to use' to an individual. Randolph Products Co. v. Manning, 3 Cir., 1949, 176 F.2d 190 and Walnut Street Co. v. Glenn, D.C.W.D.Ky.1948, 83 F.Supp. 945, in including within (f) rent received from a partnership made up of the shareholders of the lessor corporation, reasoned that the partnership was not an entity and so the use of the property was in the individual shareholdersAs noted above the tax imposed by Section 500 was created by Section 351 of the Revenue Act of 1934 to reach for taxation purposes the income from securities shielded from the individual surtax by a corporate entity. In determining whether the corporation was a personal holding company income from rent was not taken into consideration in the 1934 and 1936 Acts. This proved to be a loophole whereby the entire tax could be avoided. A taxpayer could transfer his securities to a corporation. Under the 1934 and 1936 Acts the income would be subject to the surtax of Section 351, presuming that all other prerequisites were met. However if the taxpayer also transferred to the same corporation assets, such as houses or yachts, which he would then rent from the corporation, the entire surtax on the corporation would be avoided, if the income from such rentals constituted more than 20% of the corporation's gross income. By this device the income from securities was shielded from both the individual surtax of Chapter 1 and the corporate surtax of Section 351. (H.Rept. 1546 and S.Rept. 1242, 75th Congress, 1st Sess.) To remedy this situation subsection (f) was created in the 1937 amendment, 50 Stat. 813, to the 1936 Act. The wording of this subsection is broad. The rental may be received from anyone; the individual need not actually use the property, so long as he has the right to use; the stock ownership may be direct or indirect; the right to use may be obtained directly or by means of a sublease or other arrangement. Subsections (f) and (g) were enacted at the same time and, except for the exclusion of (f) income in (g), are overlapping. That is to say, barring (f), rental received from an individual stockholder would have been includible under (g). But (f) does not have the 50% test that (g) does. Quite clearly the protection afforded real estate operating companies by the 50% test in (g) was not though appropriate for (f) where the lessee would be the shareholder of the lessor corporation. (Cf. H.Rept. 1546, 75th Congress, 1st Sess.; S.Rept. 558, 73rd Congress, 2nd Sess.) Thus, after the 1937 Amendment, rent received by the lessor corporation for the use by a shareholder of the lessor's property was not, under (f), subject to the 50% exemption. There would appear to be no reason to attribute to Congress an intent to allow this provision to be frustrated by the mere creation of a second corporation which would pay the rent instead of the individual shareholder. While it is true that under New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, the corporation is an entity for the purpose of the imposition of taxes, the two sole shareholders of a corporation indirectly do have the use of its leased property. Thus to construe the rents paid by the lessee corporation as includible under subsection (f) does not require that 'individual' be construed to include corporations, as supposed in the Minnesota Mortuaries, Inc., Randolph Products, and Walnut Street Co. cases, but merely to hold that such a device is one of the 'other arrangements' of the subsection.
 
 
 8
 However, the exemption of the 1950 Act as amended applies to the rents received by the taxpayer here, since they were received for the use by the shareholders of the property through Grosfeld House, Inc. in a bona fide commercial or industrial enterprise. The application of 502(f) was found to work a hardship on shareholders in corporations which had become closely held and which had rented most of their assets for use in the operation of businesses to the individuals holding the stock in the corporation, thus unwittingly making the corporations personal holding companies and subject to the penalty tax. The Congress therefore in 1950 for a period later extended to include 1950, limited the application of 502(f) 'to eliminate * * * rents for the use of a corporation's property by persons holding 25 percent or more of the stock of the company where the property is used by such persons '* * * in the operation of a bona fide commercial, industrial or mining enterprise * * *" Senate Report No. 2374, 81st Congress, 2nd Session.
 
 
 9
 Literally if we consider the language of the statutory exception, Sec. 223 of the 1950 Act, P.L. 814, 81st Congress, extended by P.L. 370, 84th Congress, 1st Session, that 502(f) 'shall not apply,' it may be argued that the rent is holding company income since there is no provision that the remainder of 502 shall not apply. It would follow, that the 50% provision of (g) would apply, and that since the $6,000 is less than 50% of the gross income, it would be considered as holding company income. The reference to rental of 'most of' the assets is said to point in that direction. 2 U.S.Code Cong.Serv. 81st Cong. 2nd Session, p. 3120. However, if the proportion of assets rented were the test, this taxpayer would be exempt. Here all of the assets were rented to the shareholders for bona fide industrial or commercial use. The timing of the compensation award and purchase of the new building was such that the rent was for a portion only of the tax year, and since it was less than the interest portion of the award, did not meet the 50% test of (g) if that test is applicable. However, the language of the Committees in discussing the proposal in 1950 and in 1955 points to an intention to exclude such rent from holding company income, not merely from subsection (f). The Committee Report on Section 223, which appears at 2 U.S.Code Cong.Serv. 81st Cong. p. 3239, is as follows:
 
 
 10
 'Section 223. Personal Holding Company Income.
 
 
 11
 'This section excludes from the definition of domestic personal holding company income for a limited period (taxable years ending after December 31, 1945, and before January 1, 1950) rents received by a corporation for the use of its property by a stockholder if the rents were received for the use of property by the lessee in the operation of a bona fide commercial, industrial, or mining enterprise. The revenue effect is negligible.'
 
 
 12
 This intent to exclude the rent, from shareholders for commercial, etc. use, from personal holding income entirely, not merely from 502(f), is reiterated in the report of the House Committee on Ways and Means on the Act of 1955 which extended the exception to cover the period in suit. This language was adopted by the Senate Committee on Finance. 2 U.S.Code Cong. & Admin. News, 84th Cong. 1st Session, pp. 3036, 3037. While the approach to the problem was changed in the 1954 Code, due to the danger of loopholes in the temporary measure, it would appear that this taxpayer in the year in question, fell within the class for which relief was intended.
 
 
 13
 It was the plain intention of the Congress for the period in question to exempt from personal holding company income rents from shareholders in the situation of these two individuals, who leased taxpayer's property through a wholly owned corporation through which they used it to carry on a bona fide commercial or industrial enterprise.
 
 
 14
 Exclusion of the $6,000 from personal holding company income brings the percentage of such income below 80% of its gross income, and requires a judgment in favor of petitioner.
 
 
 15
 Reversed and remanded for proceedings consistent with this opinion.
 
 MEDINA, Circuit Judge (concurring)
 
 16
 The Supreme Court has told us that, although the word is sometimes used with broader meanings, 'interest' as used in the Internal Revenue Code implies a consensual transaction calling for compensation for the loan of money or for forbearance to collect amounts due, and that authorities using the word in a different context to describe damages for the detention of money or property are 'irrelevant.' Deputy v. du Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 84 L.Ed. 416; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484. Kieselbach v. Commissioner, 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358, held nothing to the contrary; in fact, the court pointed out that, 'the question here is not whether these sums are interest.' 317 U.S. at page 405, 63 S.Ct. at page 306.
 
 
 17
 In addition, the applicable regulation defines 'interest' as 'any amounts includible in gross income, received for the use of money loaned * * *.' Reg. 111, Sec. 29.502-1. See also 7 Mertens, Law of Federal Income Taxation Sec. 40.07. There was no loan in the case at bar.
 
 
 18
 Hence, I would also reverse the Tax Court's determination that the payment denominated 'interest' by the City is 'interest' within the meaning of the Code.