**HILLDUN CORPORATION, Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 248, Docket 32610.**

United States Court of Appeals
Second Circuit.

Argued Jan. 23, 1969.

Decided April 2, 1969.

---

Earle H. Grossman, New York City, for petitioner.

William A. Friedlander, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Marian Halley, Attys., Dept. of Justice, on the brief), for respondent.

Before MEDINA, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Taxpayer appeals from a decision of the Tax Court, 26 CCH Tax Ct.Mem. 1035 (1967), determining a deficiency in its income tax payments for the year ended August 31, 1960[1] on the ground that it was taxable as a personal holding company under Section 541 of the Internal Revenue Code of 1954 as then in effect, ch. 736, § 541, 68A Stat. 182. During this year taxpayer was engaged in a real estate business and in a financing business.

**I.**

Taxpayer's liability for the personal holding company tax turns, first, on whether rental income constituted 50% or more of its gross income. If it did then none of taxpayer's rental income was "personal holding company income" under Section 543(a)(7) of the Code as then in effect[2] and its remaining personal holding company income would not be a sufficiently large percentage of its gross income (i. e. 80%) to make it subject to the tax.[3] If rental income did not amount to at least 50% of gross income, then all of that income would be "personal holding company income" and this taken together with other income which was concededly personal holding company income would be sufficient to make the taxpayer subject to the tax.

The Tax Court reviewed seven items claimed as rental income by taxpayer under Treasury Regulation 1.61–8(c) (1957)[4] and found that six of them were

---

1. Taxpayer does not appeal from the portion of the decision holding it taxable as a personal holding company for the year ended August 31, 1961.

2. "Sec. 543. Personal Holding Company Income.
 (a) General Rule.—For purposes of this subtitle, the term 'personal holding company income' means the portion of the gross income which consists of:
 * * *
 (7) Rents.—Rents, unless constituting 50 percent or more of the gross income. For purposes of this paragraph, the term 'rents' means compensation, however designated, for the use of, or right to use, property, and the interest on debts owed to the corporation, to the extent such debts represent the price for which real property held primarily for sale to customers in the ordinary course of its trade or business was sold or exchanged by the corporation; but does not include amounts constituting personal holding company income under paragraph (6)."

Internal Revenue Code of 1954, ch. 736, § 543(a)(7), 68A Stat. 186–87.

3. "Sec. 542. Definition of Personal Holding Company.
 (a) General Rule.—For purposes of this subtitle, the term 'personal holding company' means any corporation (other than a corporation described in subsection (c)) if—
 (1) Gross Income Requirement.—At least 80 percent of its gross income for the taxable year is personal holding company income as defined in section 543
 * * *."

Internal Revenue Code of 1954, ch. 736, § 542(a)(1), 68A Stat. 182.

4. Treas.Reg. 1.61–8(c) (1957):
 "Rents and royalties
 (c) Expenditures by lessee. As a general rule, if a lessee pays any of the expenses of his lessor such payments are additional rental income of the lessor. If a lessee places improvements on real estate which constitute, in whole or in part,

**1120**

not rental income. It assumed without deciding that another item in the amount of $2040 was rental income. Under the findings of the Tax Court taxpayer had rental income of $113,163.67 including the unallocated item of $2040, and gross income of $227,158.05. As the rental income, including the $2040 item, did not constitute 50% of gross income, the court found that the rental income was personal holding company income, and since this income taken together with that arising from taxpayer's finance operations, which was concededly personal holding company income, constituted over 80% of its gross income, the court held that taxpayer was subject to the tax.

■ Taxpayer contends that the six contested items were in fact rental income. However, unless the Tax Court's findings are clearly erroneous, we must accept them. Commissioner v. Duberstein, 363 U.S. 278, 291–92, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

The six items considered by the Tax Court under the Treasury Regulation[5] are as follows:

■ (1) Addition to a store ($650): The Tax Court reasonably found that the testimony did not establish an intention by taxpayer to treat as rent the value of this improvement made by the lessee.

■ (2) Boiler ($230): The boiler installed by the lessee cost $425 but taxpayer allowed him a credit against his rent of only $195. The Tax Court treated this amount as rent and properly found that the parties did not intend the remaining $230 to be rent.

■ (3) Security deposit ($40): The Tax Court heard testimony to the effect

that the $40 portion of a security deposit retained by the taxpayer was held to cover the cost of cleaning and restoring vacated premises. It reasonably found however that the departing lessee owed taxpayer no additional rent so that the $40 did not constitute rental income.

■ (4) Heat for stores ($1750): Because taxpayer was specifically relieved of any obligation to supply heat, the tenants were not paying an expense of the taxpayer when they provided heat themselves. Thus the cost of the heat was not rental income to taxpayer.

■ (5) Superintendent's apartment ($297): Taxpayer's records show that it valued the superintendent's services rendered in return for the apartment at $600 a year and the Tax Court credited it with this amount of rental income. The fact that under New York law the apartment could legally have been rented for $897 a year did not require the Tax Court to ignore taxpayer's own valuation of the services by revaluing them at $897.

■ (6) Cost of screen installation ($10): A tenant paid taxpayer $10 as partial reimbursement for the cost of installing new screens. The Tax Court reasonably found the evidence insufficient to establish that the $10 was intended as rent, if the screens were an improvement, or that it reimbursed taxpayer for an expense as lessor, if the screens were a repair. Taxpayer's treatment of the $10 in its records as a reduction of expenses does not show that the screens were an expense payable by it, rather than by the tenant.

The unallocated item of $2040, noted above, consisted of payments from two corporations to taxpayer of $1440 and $600 for office space, a mailing address and, for the corporation paying $600, for

a substitute for rent, such improvements constitute rental income to the lessor. Whether or not improvements made by a lessee result in rental income to the lessor in a particular case depends upon the in-

tention of the parties, which may be indicated either by the terms of the lease or by the surrounding circumstances. * * *"

5. See note 4, *supra.*

bookkeeping services. The Tax Court did not determine the status of these payments because its other findings left taxpayer with a difference of more than $2040 between its rental income and 50% of its gross income.

■ The $1440 payment cannot be treated as rental income under Section 543(a) (7) because the four shareholders of the corporation making the payment, two of whom owned 36% interests and two of whom owned 14% interests, owned all the shares of taxpayer in the same proportions. The consequence of this identity of ownership is that the payment must be treated as a payment by shareholders for use of corporation property by an "other arrangement" and therefore personal holding company income under Section 543(a)(6) as then in effect,[6] rather than as rental income under Section 543(a)(7).[7] See 320 E. 47th St. Corp. v. Commissioner, 243 F.2d 894, 897–99 (2d Cir. 1957).

■ The part of the $600 payment by the second corporation which was compensation for bookkeeping services was clearly not rental income. We need not decide exactly what proportion, if any, was properly claimed as rental income since under our decision with respect to

the $1440 item and with respect to the claimed interest deduction, discussed *infra,* taxpayer's rental income would be less than 50% of its gross income, even if we were to reverse the Tax Court with respect to all six of the items discussed above and to treat the entire $600 as rental income. In that case taxpayer's rental income would be increased by $2977 (the value of the six items) plus $600, to $114,700.67 but its gross income would also increase by $2977 to $230,-135.05 since it would be required to treat the six items as gross income in its tax return.

## II.

■ Taxpayer also seeks to show that its rental income constituted 50% or more of its gross income by arguing that interest payments of $4330.11 made by it in connection with the operations of its finance business are deductible from gross receipts in computing gross income. This argument is based on a misinterpretation of Treasury Regulation 1.61–3(a) (1957)[8] which permits a "manufacturing, merchandising, or mining business" to deduct the "cost of goods sold" from gross receipts on the theory that this portion of the gross receipts is a return of capital and not gross income. There is no ground for holding that the

6. "Sec. 543. Personal Holding Company Income.
 (a) General Rule.—For purposes of this subtitle, the term 'personal holding company income' means the portion of the gross income which consists of:
 * * *
 (6) Use of Corporation Property by Shareholder.—Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case where, at any time during the taxable year, 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement. This paragraph shall apply only to a corporation which has personal holding company income for the taxable year, computed without regard to this para-

graph and paragraph (7), in excess of 10 percent of its gross income."
Internal Revenue Code of 1954, ch. 736, § 543(a)(6), 68A Stat. 187.

7. See note 2, *supra.*

8. Treas.Reg. 1.61–3(a) (1957):
 "Gross Income Derived From Business
 (a) In general. In a manufacturing, merchandising, or mining business, 'gross income' means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources. Gross income is determined without subtraction of depletion allowances based on a percentage of income, and without subtraction of selling expenses, losses, or other items not ordinarily used in computing cost of goods sold. The cost of goods sold should be determined in accordance with the method of accounting consistently used by the taxpayer."

payment of interest by a finance company on the money it has borrowed is a payment of capital. The interest payment is clearly to be treated as an expense of doing business to be deducted from gross income, not from gross receipts. Moreover, taxpayer is not one of the types of business covered by the regulation.

## III.

 Taxpayer makes the additional contention that even though it conducted its real estate business and its finance business as a single corporation, the two businesses should be treated as separate entities for purposes of the personal holding company tax because they were generally operated independently of each other. If treated as separate entities, both would avoid the tax. As the rental income of the real estate business would greatly exceed 50% of its gross income, the rental income would not be personal holding company income and the business would not have enough of such income to be subject to the tax. Int. Rev. Code of 1954, ch. 736, §§ 542(a)(1), 543(a)(7), 68A Stat. 182, 187. The finance business would not be a personal holding company under an exception for companies earning 80% or more of their gross income from the active conduct of such a business. Int. Rev. Code of 1954, ch. 736, § 542(c)(9), 68A Stat. 185–86.

 The statutory language, however, clearly makes the "corporation" the relevant entity in determining the tax.[9] Taxpayer chose to function as a single corporation and it must accept the consequences of that choice. Brook v. Commissioner, 360 F.2d 1011, 1014 (2d Cir. 1966); Television Indus. Inc. v. Commissioner, 284 F.2d 322, 324–25 (2d Cir. 1960). Moreover, the legislative history shows that while the tax is aimed primarily at the "incorporated pocketbook," it is to be levied upon any corporation falling within the statutory provisions. H.R.Rep. No. 704, 73d Cong., 2d Sess.

11–12 (1934); S.Rep. No. 558, 73d Cong., 2d Sess. 13, 15 (1934); see 320 E. 47th St. Corp. v. Commissioner, *supra*, 243 F. 2d at 897.

Affirmed.