**Susie SALVATORE, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVE-
NUE, Appellee.**

**No. 136 Docket 34911.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 19, 1970.

Decided Nov. 30, 1970.

Richard S. Pastore, Greenwich, Conn., for appellant.

Charles E. Anderson, Atty., Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, and Elmer J. Kelsey, Attys., Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before KAUFMAN, HAYS, and GIBBONS,* Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The taxpayer, Mrs. Susie Salvatore, conveyed a partial interest in her gas station to her children shortly before she and they joined in selling it to Texaco, Inc. Mrs. Salvatore and each of her children reported as income a share of the resulting gain. The Commissioner determined, however, that she was taxable upon the entire gain, and the Tax Court upheld his contention that she was the sole owner and seller of the gas station. Since the facts are fully set forth in the opinion of Judge Featherston, they will be recounted only briefly.

* Of the United States Court of Appeals for the Third Circuit, sitting by designation.

Mrs. Salvatore inherited a Greenwich, Connecticut gas station from her husband in 1948. In the early summer of 1963 a representative of Texaco, Inc. approached her son Amedeo, who operated the station, expressing an interest in acquiring ownership of the station. Amedeo convened a family conference, at which Mrs. Salvatore, and her three sons and two daughters decided to sell if a reasonable offer were made.

Amedeo continued negotiations with Texaco and eventually received an offer of $295,000. After another family conference, it was determined that Texaco's offer was satisfactory, and an allocation of the proceeds was agreed upon. First, tax liens against the property totaling $8000 were to be satisfied, and a $50,000 indebtedness to Texaco secured by a mortgage on the station satisfied. Mrs. Salvatore was then to receive $100,000, that being the amount calculated to earn enough interest to provide $100 per week, which would be sufficient to maintain her. The remaining proceeds were to be divided equally among Mrs. Salvatore's five children. To effectuate this understanding, the family agreed that Mrs. Salvatore would convey an undivided one-half interest in her station to the children, who would then join her in conveying to Texaco. Each was to retain his proportionate share of the proceeds.

On July 24, 1963, Mrs. Salvatore (by herself) and Texaco signed a formal agreement of purchase and sale. One month later, on August 28, she executed a warranty deed conveying the one-half interest to her children. She and her children on August 28 and 30 then conveyed their respective interests in the station to Texaco. All the deeds were filed at the recorder's office simultaneously on September 6.

The Tax Court found that Mrs. Salvatore's children were only "conduit[s] through which to pass title," citing Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981 (1945),[1] and that Mrs. Salvatore alone, rather than she and her children, was the seller of the gas station. This factual finding can be disturbed only if clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Lingham v. Commissioner of Internal Revenue, 410 F.2d 754 (2d Cir. 1969); Hilldun Corp. v. Commissioner of Internal Revenue, 408 F.2d 1117, 1120 (2d Cir. 1969). Cf. United States v. Cumberland Public Service, Co., 338 U.S. 451, 456, 70 S.Ct. 280, 282–283, 94 L.Ed. 251 (1950) ("It is for the trial court, upon consideration of an entire transaction, to determine the factual category in which a particular transaction belongs"). Indeed, there was substantial support for Judge Featherston's conclusion that Mrs. Salvatore's children were not sellers but mere "conduits." The sequence of events at the second family conference which approved the sale, demonstrates that Mrs. Salvatore and her children were concerned solely with distributing the proceeds of the sale, and that the transfer of title was simply a step towards that end. The insubstantiality of the children's "ownership," which they

---

1. In *Court Holding*, a corporation negotiated the sale of its only asset, an apartment building. An oral agreement had been reached, but shortly before this agreement was to be reduced to writing, it was determined that lower taxes would result if the corporation distributed the building to its two shareholders as a liquidating dividend and they then sold it to the prospective purchaser. This they proceeded to do, and the shareholders sold on the precise terms the corporation had negotiated. In upholding the Tax Court's determination that the corporation, rather than the shareholders, had sold the building, the Supreme Court said, "The incidence of taxation depends upon the substance of a transaction. * * * To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." 324 U.S. at 334, 65 S.Ct. at 708.

acquired only on the understanding that they would reconvey, is further underscored by its fleeting duration—no more than a few hours on August 28 as to several of the children, and approximately two days in the case of a daughter living in Florida.

In any event, on the record before us, we find that the Tax Court was not clearly erroneous, and we therefore affirm.