T.C. Memo. 1996-431


UNITED STATES TAX COURT


GEORGE AND MYRSINI STOTIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15848-94.               Filed September 24, 1996.


<u>Warren M. Burd</u>, for petitioners.

<u>Kevin J. Kilduff</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CLAPP, <u>Judge</u>:  Respondent determined the following

deficiencies in petitioners' Federal income taxes and penalties:

| | | Penalties | |
| Year | Deficiency | Sec. 6662(a) | Sec. 6663 |
| --- | --- | --- | --- |
| 1989 | $90,116 | -- | $67,587 |
| 1990 | 2,541 | $508 | -- |
| 1991 | 1,828 | 360 | -- |

After concessions by the parties, the issues for decision are:

(1) Whether George Stotis (petitioner) recognized a taxable gain when he surrendered certain leasehold rights. We hold that he did.

(2) Whether petitioner is liable for a penalty for fraud pursuant to section 6663, or whether petitioners are liable for a penalty pursuant to section 6662(a) for negligence or disregard of rules or regulations for the taxable year 1989. We hold that petitioner is liable for the penalty on a portion of the underpayment, and petitioners are liable for the penalty on the remaining portion of the underpayment.

(3) Whether petitioners are liable for penalties pursuant to section 6662(a) for negligence or disregard of rules or regulations for the taxable years 1990 and 1991. We hold that they are.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

## FINDINGS OF FACT

Some of the facts are stipulated and are so found. We incorporate by reference the stipulation of facts, supplemental stipulation of facts, and attached exhibits.

Petitioners are husband and wife, and petitioner resided in New York, New York, at the time the petition was filed. Petitioners were born in Greece, and they have two daughters, Maria Stotis (Maria) and Evanthia Stotis (Evanthia).

Petitioner moved to the United States in 1975. Since 1975, petitioner has operated a street vending cart and has sold pretzels and sodas at various locations in New York City.

From 1987 through November 1989, petitioner resided in adjoining rooms 103 and 141 (rooms 103 and 141) at 321 West 33d Street, New York, New York (the apartment building).

From 1987 through 1989, Maria and Evanthia lived with Mrs. Stotis in Greece. Mrs. Stotis occasionally visited petitioner in New York, but petitioner was the only individual with a property interest in rooms 103 and 141.

Palm View Corp. (Palm View) served as landlord to the tenants in the apartment building. Seawall Associates (Seawall) owned the apartment building. Seawall wanted to relocate the tenants and then raze the structure to make room for an office building. In 1989, approximately six to ten of the apartment building units were occupied, and petitioner occupied two of those units.

Seawall approached petitioner with the hope that it could convince him to vacate rooms 103 and 141. Rather than negotiate directly with Seawall, petitioner hired Dionysis Spyropoulos (Spyropoulos), an attorney, to negotiate with Seawall.

Petitioner speaks Greek but not English, and Spyropoulos speaks English and Greek.

Seawall and petitioner reached an agreement under which petitioner would surrender his rights in rooms 103 and 141 to Seawall. They memorialized their agreement in two separate documents: A surrender agreement and a sublease agreement.

The surrender agreement, dated November 14, 1989, provided that petitioner would surrender his rights in rooms 103 and 141 in exchange for, among other things, $300,000, $22,500 in legal fees and expenses, and an apartment at 433 West 34th Street, New York, New York (new apartment) rent free for 3 years. Petitioner and Seawall's and Palm View's authorized representatives signed the surrender agreement. Attached to the surrender agreement is the affidavit of John Caramalis (Caramalis), which indicates that he is fluent in conversational Greek, and he read and explained, in the Greek language, all the material terms and conditions of the surrender agreement to petitioner.

Seawall made two payments pursuant to the surrender agreement. First, Seawall issued a check in the amount of $25,000 to Spyropoulos to be held in escrow until petitioner surrendered rooms 103 and 141 to Seawall. The escrow agreement provided that $22,500 went to Spyropoulos for legal fees and expenses and the remaining $2,500 belonged to petitioner. Second, Seawall was to pay petitioner $297,500 when he surrendered rooms 103 and 141 to Seawall.

The sublease agreement, dated November 14, 1989, provided that petitioner could occupy the new apartment rent free for 3 years. The fair rental value of the new apartment was $900 per month. Petitioner occupied the new apartment during the entire 3-year lease period which began December 1, 1989, and terminated November 30, 1992. The sublease agreement makes no reference to the surrender agreement or the $322,500 payment by Seawall pursuant to the surrender agreement. Petitioner and Seawall's authorized representatives signed the sublease agreement.

Spyropoulos explained the terms of the surrender agreement and the sublease agreement to petitioner. Petitioner never asked Spyropoulos about the tax consequences of the surrender agreement or the sublease agreement, and Spyropoulos never provided petitioner with any tax advice.

Petitioner surrendered rooms 103 and 141 to Seawall, and petitioner moved into the new apartment. In a letter dated November 17, 1989, petitioner instructed Seawall to disburse the $297,500 payable under the surrender agreement by certified checks as follows: $100,000 to Mrs. Stotis, $100,000 to Maria, and $97,500 to Evanthia.

Seawall issued three checks in accordance with petitioner's instructions. Seawall's agent hand delivered the three checks to petitioner. Prior to Seawall's agent relinquishing control of the checks, petitioner acknowledged the receipt of each check by signing the back.

Each check was negotiated in Greece.  Mrs. Stotis and petitioner endorsed the $100,000 check issued to Mrs. Stotis; Maria and petitioner endorsed the $100,000 check issued to Maria; and Evanthia and petitioner endorsed the $97,500 check issued to Evanthia.

Seawall issued a Form 1099 to each tenant with whom it entered into a surrender agreement, including petitioner.  At the end of 1989, Seawall issued to petitioner a Form 1099 in the amount of $322,500.

Tax Return Preparation

Andrew Sotiriou (Sotiriou) prepared petitioners' Federal income tax returns (Forms 1040) for the taxable years 1985 through the years in issue.  Sotiriou worked as a travel agent, and he prepared his clients' tax returns as an additional service.

Petitioner reported gross income from his vending business of $11,470, $13,810, and $11,320 for the taxable years 1989, 1990, and 1991, respectively, on Schedules C of petitioners' Forms 1040.  Sotiriou did not review any documents related to petitioner's vending business; he merely relied on petitioner's statements regarding receipts and expenses.

Petitioner did not report the $322,500 payment from Seawall for the taxable year 1989.  Petitioner did not report the fair market rental value of the new apartment for the taxable years 1989, 1990, or 1991.  Petitioner never provided Sotiriou with the

Form 1099 issued by Seawall for the taxable year 1989. Prior to the audit by respondent, petitioner never told Sotiriou about the payments received from Seawall or the rent-free apartment received from Seawall.

After respondent began the audit of petitioners' Forms 1040, petitioner told Sotiriou about the amounts received pursuant to the surrender agreement and the sublease agreement. Sotiriou advised petitioner to file amended tax returns and report the $322,500 and the fair market rental value of the new apartment. Petitioner rejected Sotiriou's advice.

Respondent's Investigation

Respondent initiated an audit of petitioners' Forms 1040 for the years in issue after receiving notice of a Form 1099 that was not reflected on petitioners' Form 1040 for the taxable year 1989.

Michael Signorile (Signorile), a revenue agent for respondent, interviewed petitioner on April 8, 1992, and again on April 29, 1992. Spyropoulos attended each interview. Since Signorile did not speak Greek, Spyropoulos interpreted for petitioner during the interviews.

During the April 8, 1992, meeting with Signorile, petitioner stated that, in exchange for vacating rooms 103 and 141, he received the new apartment rent free for 3 years and nothing else.

Petitioner and Signorile met again on April 29, 1992, and petitioner brought a copy of the sublease agreement to the meeting. Petitioner did not bring a copy of the surrender agreement to the meeting. Petitioner again stated that, in exchange for vacating rooms 103 and 141, he received the new apartment rent free for 3 years and nothing else. At Signorile's request, petitioner signed a written statement to that effect. Signorile drafted the written statement, and Spyropoulos read the statement to petitioner before petitioner signed it.

## OPINION

The dispute in this case is whether petitioner is liable for tax on the amounts paid by and/or value received from Seawall pursuant to the surrender agreement and sublease agreement. Seawall paid $297,500 to petitioner's family members, $2,500 to petitioner, and $22,500 to Spyropoulos for legal fees and expenses. Seawall also provided petitioner with the new apartment rent free for 3 years. We address each in turn.

Petitioner seems to argue that he should not be taxed on the $297,500 disbursed to his family because he never received those moneys. Respondent argues that the $297,500 is taxable to petitioner. We agree with respondent.

Gross income includes gains derived from dealings in property. Sec. 61(a)(3). Income is taxed to the person that "earned" the item of income. Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Helvering v. Horst, 311 U.S. 112, 115-

117 (1940); Lucas v. Earl, 281 U.S. 111, 114-115 (1930).  An item of income is considered "earned" when the taxpayer has a fixed and determinable right to the income.  Schneider v. Commissioner, 65 T.C. 18, 26-27 (1975).  For a right to income to be fixed and determinable "there can be no substantial contingency to * * * [the] taxpayer's right of receipt or as to the certainty of the amount to be received."  Schneer v. Commissioner, 97 T.C. 643, 650 (1991).  When income has been assigned to another, "The choice of the proper taxpayer revolves around the question of which person * * * in fact controls the earning of the income rather than the question of who ultimately receives the income."  Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980).  To determine who controls the earning of the income in the case before us, we need only look to the general principle that the gain realized from the sale of property is taxable to the owner of the property.  See Salvatore v. Commissioner, 434 F.2d 600 (2d Cir. 1970), affg. T.C. Memo. 1970-30.

Petitioner was the only individual with a property interest in rooms 103 and 141.  When petitioner, Palm View, and Seawall executed the surrender agreement, they agreed on the amount of moneys petitioner would receive in exchange for vacating rooms 103 and 141.  Petitioner obtained a fixed and determinable right to the income when he vacated rooms 103 and 141 and surrendered the same to Seawall.  Seawall was ready, willing, and able to disburse the funds to petitioner.  Petitioner does not deny that

he was entitled to the moneys from Seawall; indeed, he seems to concede as much. Petitioner testified that he did not want the moneys distributed to him, because he feared that he would spend them. We conclude that the $100,000 paid to Mrs. Stotis, the $100,000 paid to Maria, and the $97,500 paid to Evanthia constitute taxable gain to petitioner on the sale of petitioner's leasehold interest in rooms 103 and 141.

Respondent determined that the $2,500 payment to petitioner, which Spyropoulos held in escrow, is taxable to petitioner. We agree. The moneys were available to petitioner when he satisfied the escrow provisions.

Respondent determined that the $22,500 disbursed by Seawall to Spyropoulos for legal fees and expenses is taxable to petitioner. We agree. Where a third party pays the expense of a taxpayer, the payments are treated as income to the taxpayer unless they can be shown to be loans or other nontaxable items. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929); O'Malley v. Commissioner, 91 T.C. 352, 358 (1988). Petitioner does not argue that the funds paid to Spyropoulos on his behalf are exempt from petitioners' gross income. Rather, petitioner argues that the fee paid to Spyropoulos should be offset against the gain realized from the sale of his leasehold interest.

In general, the deductibility of a legal expense depends upon the purpose for which the expense was incurred. United States v. Gilmore, 372 U.S. 39, 48-49 (1963); Lykes v. United

States, 343 U.S. 118, 123 (1952). Legal expenses incurred as part of the disposition of a capital asset ordinarily are capital expenditures that are offset against the amount received from the sale of the capital asset. Issac G. Johnson & Co. v. United States, 149 F.2d 851, 852 (2d Cir. 1945); Gunn v. Commissioner, 49 T.C. 38, 51-52 (1967); see also Jasko v. Commissioner, 107 T.C. 30 (1996). Whether an expenditure is capital in nature or deductible under sections 162 or 212 is a question of fact. Gunn v. Commissioner, supra at 52; Plainfield-Union Water Co. v. Commissioner, 39 T.C. 333, 337 (1962).

Petitioner's leasehold interest in rooms 103 and 141 was a capital asset. Sec. 1221; Commissioner v. McCue Bros. & Drummond, Inc., 210 F.2d 752, 753 (2d Cir. 1954), affg. 19 T.C. 667 (1953); Miller v. Commissioner, 48 T.C. 649, 651-652 (1967); sec. 1.1221-1(a), Income Tax Regs. Petitioner's sale to Seawall of his leasehold interest constitutes a sale or exchange. Sec. 1241. Petitioner paid Spyropoulos legal expenses for the sole purpose of disposing of the leasehold interest in rooms 103 and 141. Thus, the legal expenditures of $22,500 are capital expenditures that are offset against the gain realized by petitioner.

In exchange for vacating rooms 103 and 141, petitioner received use of the new apartment rent free for 3 years. The amount realized from the taxable sale or other disposition of property is the amount of money received plus the fair market

value of property other than money received.  Sec. 1001(b).  We conclude that the fair market rental value of the new apartment petitioner received rent free from Seawall constitutes an amount realized from the disposition of his leasehold interest, receivable pro rata over the 3-year period as determined by respondent.  See <u>Alstores Realty Corp. v. Commissioner</u>, 46 T.C. 363, 374 (1966).

Petitioner argues that the rent on the new apartment, less the rent on rooms 103 and 141, multiplied by his life span constitutes "additional rent" that should offset the gain realized on the disposition of his leasehold interest. Petitioner argues, in substance, that his increased housing costs should be deductible.  We do not agree.  Petitioner simply has chosen a more costly apartment in which to reside.  This increased expense is a nondeductible personal expenditure.  Sec. 262.

<u>Penalties</u>

Respondent determined that petitioner is liable for a penalty for fraud under section 6663 for the taxable year 1989. Section 6663(a) provides that there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment that is attributable to fraud.  Section 6663(b) provides that if the Commissioner establishes that any portion of an underpayment is due to fraud, the entire underpayment is treated as attributable to fraud, unless the taxpayer proves that some

portion of the underpayment is not due to fraud.  Respondent concedes that Myrsini Stotis is not liable for the penalty for fraud.

The Commissioner has the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  First, the Commissioner must prove the existence of an underpayment.  Parks v. Commissioner, 94 T.C. 654, 660 (1990).  The Commissioner may not rely upon the taxpayer's failure to carry the burden of proof as to the underlying deficiency.  Id. at 660-661; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989); Estate of Beck v. Commissioner, 56 T.C. 297, 363 (1971).  Second, the Commissioner must show that the taxpayer intended to evade taxes by conduct intended to conceal, mislead, or otherwise prevent tax collection.  Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Parks v. Commissioner, supra at 661; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).

For the reasons discussed above, we find that respondent has established substantial amounts of unreported income and consequent underpayment of tax for 1989.

Respondent must prove by clear and convincing evidence that petitioner had fraudulent intent.  Parks v. Commissioner, supra at 664.  Fraud may be proven by circumstantial evidence.  Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984).  A taxpayer's entire course of conduct may establish the requisite fraudulent intent.  Stone v.

Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969).  The intent to conceal or mislead may be inferred from a pattern of conduct.  Spies v. United States, 317 U.S. 492, 499 (1943).

A taxpayer's failure to give complete information to his tax return preparer may be evidence of fraudulent intent.  Korecky v. Commissioner, 781 F.2d 1566, 1569 (11th Cir. 1986), affg. per curiam T.C. Memo. 1985-63.  Petitioner surrendered rooms 103 and 141 to Seawall in exchange for $322,500 and use of an apartment rent free for 3 years.  Petitioner initially concealed the $322,500 payment and the rent-free apartment from Sotiriou, his return preparer.  Petitioner eventually told Sotiriou about the $322,500 payment and the rent-free apartment, but only after respondent initiated an audit of petitioners' Forms 1040.  Sotiriou then advised petitioner to file amended tax returns, but petitioner refused.

Petitioner also failed to give Sotiriou a copy of the Form 1099.  We conclude that petitioner either intentionally withheld the Form 1099 from Sotiriou or failed to maintain a copy of the Form 1099.  Failure to maintain accurate records may be evidence of fraudulent intent.  Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172.

False or misleading statements to respondent's agents may be evidence of fraudulent intent.  Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980).  At the first meeting with Signorile,

petitioner stated that, in exchange for surrendering rooms 103 and 141, he received the new apartment rent free for 3 years and nothing else. Petitioner knew this to be false. At the second meeting with Signorile, petitioner again stated that, in exchange for surrendering rooms 103 and 141, he received the new apartment rent free for 3 years and nothing else. Petitioner also signed a statement to that effect. Also at the second meeting, petitioner produced a copy of the sublease agreement, but he did not produce a copy of the surrender agreement. We conclude that petitioner attempted to mislead Signorile.

Petitioner argues that he is not fluent in English, and he did not realize that he was required to report the amounts received from Seawall. Courts have considered the educational level and sophistication of the taxpayer when considering the Commissioner's fraud determination. Id. at 19. When Seawall initially approached petitioner about vacating rooms 103 and 141, petitioner contacted Spyropoulos. Spyropoulos represented petitioner when the surrender agreement and sublease agreement were negotiated. Spyropoulos spoke fluent Greek, and he explained the agreements to petitioner. The affidavit of Caramalis attached to the surrender agreement indicates that Caramalis read and explained to petitioner, in the Greek language, the terms of the surrender agreement. On November 14, 1989, petitioner entered into the surrender agreement and the sublease agreement with Seawall. When it came time for

petitioner to receive payment pursuant to the surrender agreement, petitioner instructed Seawall to issue certified checks to Mrs. Stotis, Maria, and Evanthia. Spyropoulos attended petitioner's meetings with Signorile, and Spyropoulos interpreted for petitioner. During those meetings, petitioner realized the important differences between the surrender agreement and the sublease agreement. Petitioner produced the sublease agreement which seemingly corroborated his story that he received from Seawall the new apartment rent free for 3 years and nothing else. Petitioner withheld the surrender agreement that contained the provisions for payment of $322,500 by Seawall. Petitioner signed a written statement that he received from Seawall the new apartment rent free for 3 years and nothing else. Spyropoulos read the statement to petitioner before petitioner signed it. We find that petitioner understood the negotiations with Seawall, the surrender agreement, the sublease agreement, the statements he made to Signorile, and the written statement that he signed for Signorile.

Petitioner testified that he received tax advice from Spyropoulos. We need not accept uncorroborated testimony at face value if it is questionable, improbable, or unreasonable. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Fleischer v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968). We find petitioner's testimony questionable and improbable. Spyropoulos contradicted petitioner's testimony disclaiming any knowledge of

tax law.  Petitioner's testimony was vague, and he remembered few specifics surrounding the surrender agreement, the sublease agreement, and the meetings with Signorile.  Petitioner could not remember signing the surrender agreement.  We also give less weight to petitioner's testimony because of his prior efforts to mislead Sotiriou and Signorile.

Considering the record taken as a whole and reasonable inferences therefrom, we conclude that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes, and that the portion of the underpayment for the taxable year 1989 attributable to the $322,500 paid by Seawall pursuant to the surrender agreement is attributable to fraud.  Respondent has conceded that the underpayment of tax attributable to the rent-free use of the new apartment is not attributable to fraud.

Respondent determined that petitioners are liable for a penalty under section 6662(a) for any portion of the underpayment for the taxable year 1989 not attributable to fraud, and for the entire underpayments for the taxable years 1990 and 1991.  Section 6662(a) imposes a penalty equal to 20 percent of the portion of the underpayment that is attributable to negligence.

We have held that the underpayment attributable to the unreported $322,500 is attributable to petitioner's fraud.  This holding makes moot respondent's alternative determination as to petitioners pursuant to section 6662 that the underpayment of tax

attributable to the unreported $322,500 is attributable to negligence.  See sec. 6662(b); <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 220 (1992).  However, the portion of the underpayment of tax attributable to the rent-free use of the new apartment in 1989 is not insulated from the section 6662 penalty.

Petitioners argue that petitioner reasonably relied on the advice of Spyropoulos as to the tax ramifications of the surrender agreement and the sublease agreement.  Spyropoulos did not provide petitioners with tax advice.  Petitioners' argument that they reasonably relied on Spyropoulos is without merit.  We conclude that the portion of the underpayment of tax attributable to the rent-free use of the new apartment in 1989, and the entire underpayments of tax for the taxable years 1990 and 1991 are attributable to negligence.

To reflect the foregoing and the concessions by the parties,

<u>Decision will be entered</u>

<u>under Rule 155.</u>