320 E. 47TH STREET CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54252. Filed June 13, 1956.

*Lester R. Bachner, Esq.*, for the petitioner.
*Charles M. Greenspan, Esq.*, for the respondent.

OPINION.

Rice, *Judge:* Petitioner argues that the $20,728.81 which it reported as interest on the condemnation award did not constitute interest within the meaning of section 502 (a) ; that such amount was a part of the condemnation award itself; and that it in fact is entitled to a refund since the amount of so-called interest was not ordinary income.

The respondent argues that what was denominated as interest in the Administrative Code of the City of New York, in the decree of the Supreme Court of New York, in the payment which the City made to petitioner, and as reported by petitioner on its return, was both in name and in fact interest and, therefore, clearly within the meaning of the word "interest" as used in section 502 (a) of the Code. In support of his position, he cites *Kieselbach* v. *Commissioner*, 317 U. S. 399 (1943).

In the *Kieselbach* case, the Supreme Court held that a similar interest payment received by a taxpayer from the City of New York was ordinary income within the meaning of section 22, and was not a capital gain realized upon the sale of an asset under section 117. In the course of its opinion, the Court said of such an interest payment, page 403:

Whether one calls it interest on the value or payments to meet the constitutional requirement of just compensation is immaterial. It is income under § 22, paid to the taxpayers *in lieu of what they might have earned on the sum* found to be the value of the property on the day the property was taken. It is not a capital gain upon an asset sold under § 117. * * *

The property was turned over in January, 1933, by the resolution. This was the sale. Title then passed. The subsequent earnings of the property went to the city. The transaction was as though a purchase money lien at legal interest was retained upon the property. Such interest when paid would, of course, be ordinary income. [Emphasis added.]

We, therefore, think it clear that petitioner correctly reported the amount of interest received from the City as ordinary income and that its present argument to the contrary is wrong. *Isaac G. Johnson & Co.* v. *United States*, 149 F. 2d 851 (C. A. 2, 1945) ; *William Justin Petit*, 8 T. C. 228 (1947).

In the course of its opinion in the *Kieselbach* case, the Court specifically refrained from deciding whether the interest payment there in question was in fact "interest" or some other form of ordinary income. We do not understand, however, how the nature or character of the payments there and here could result in their being called any-

thing other than interest. In the above-quoted paragraph from the *Kieselbach* opinion, the Court characterized the payment as being in lieu of earnings on the award which the taxpayer would have received if the award had been paid promptly, and thereafter invested. Both payments there and here were for the use of money which rightfully belonged to the taxpayers from the date the title to their property vested in the City until the time when the condemnation award was ultimately paid to them. We think such payments fall clearly within the Supreme Court's definition of interest in *Deputy* v. *du Pont*, 308 U. S. 488 (1940); and *Old Colony R. Co.* v. *Commissioner*, 284 U. S. 552 (1932).

Petitioner did not point to, nor do we find, any evidence that Congress intended the word "interest" in section 502 (a) to have some different meaning than it has in other sections of the Code. We think the word has the same meaning in section 502 (a) as it does in section 22 (a), section 23 (b), and elsewhere. See *General American Life Insurance Co.*, 25 T. C. 1265 (1956).

We therefore conclude that the sum which the petitioner received from the City of New York as interest, and reported on its return as interest, was, in fact, interest within the meaning of section 502 (a).

Petitioner advanced an alternative argument against the imposition of the personal holding company tax on the grounds that, even assuming the interest income which it received to be interest within the meaning of section 502 (a), the rent which it received was not personal holding company income; and that, because the amount of interest received did not constitute 80 per cent of its gross income, it does not satisfy the statutory requirement that 80 per cent of its gross income be personal holding company income. It argues that the rent which it received was not compensation for the use of property within the meaning of section 502 (f)[2] and, therefore, personal holding company income, because of the enactment of section 223 of the Revenue Act of 1950.

In section 223 of the 1950 Revenue Act,[3] as amended by Pub. L. 370, 84th Cong., 1st Sess. (1955), Congress provided that section 502 (f) of the Code should not apply to rents received by what would otherwise be a personal holding company during taxable years ended after De-

---

[2] SEC. 502. PERSONAL HOLDING COMPANY INCOME.

For the purposes of this subchapter the term "personal holding company income" means the portion of the gross income which consists of:

\* \* \* \* \* \* \*

(f) USE OF CORPORATION PROPERTY BY SHAREHOLDER.—Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case where, at any time during the taxable year, 25 per centum or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement.

[3] 64 Stat. 947.

cember 31, 1945, and before January 1, 1954, if such rents were received for the use of its property in the operation of a bona fide commercial venture by an individual holding 25 per cent or more of its stock.

The rent which petitioner received was received from a corporation whose stockholders were identical with its own stockholders. But the lessee corporation was a separate entity apart from the stockholders. It was not an "individual" within the meaning of section 502 (f). See H. Rept. No. 1546, 75th Cong., 1st Sess. (1937), p. 6. Nor can the stockholders be deemed to be the lessees of the property in its place. See *Western Transmission Corporation*, 18 T. C. 818 (1952); *Minnesota Mortuaries, Inc.*, 4 T. C. 280 (1944). The rent which petitioner received was not compensation for the use of the property within the meaning of section 502 (f), but was rent within the meaning of section 502 (g).[4] We, therefore, conclude that more than 80 per cent of petitioner's income was personal holding company income and that it is subject to tax as a personal holding company.

*Decision will be entered for the respondent.*

---

[4] SEC. 502. PERSONAL HOLDING COMPANY INCOME.

For the purposes of this subchapter the term "personal holding company income" means the portion of the gross income which consists of:

* * * * * * *

(g) RENTS.—Rents, unless constituting 50 per centum or more of the gross income. For the purposes of this subsection the term "rents" means compensation, however designated, for the use of, or right to use, property, and the interest on debts owed to the corporation, to the extent such debts represent the price for which real property held primarily for sale to customers in the ordinary course of its trade or business was sold or exchanged by the corporation; but does not include amounts constituting personal holding company income under subsection (f).