ALLIED INDUSTRIAL CARTAGE COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7918–77.     Filed June 20, 1979.

*Robert I. Alpern*, for the petitioner.
*Thomas E. Ritter*, for the respondent.

STERRETT, *Judge:* Respondent, on April 29, 1977, issued a statutory notice in which he determined a deficiency in petitioner's Federal corporate income tax return for its taxable year ended February 28, 1974, in the amount of $8,047.90. The narrow issue presented to the Court is whether the sole shareholder of a lessee corporation will be treated as "an individual entitled to the use of property" under section 543(a)(6), I.R.C. 1954.

FINDINGS OF FACT

This case was submitted under Rule 122, Tax Court Rules of Practice and Procedure, hence, all of the facts have been stipulated and are so found.

Petitioner Allied Industrial Cartage Co. is a corporation whose principal place of business is located in Detroit, Mich. It filed its Federal corporate income tax return (Form 1120) for its fiscal year ended February 28, 1974, with the Internal Revenue Service Center, Covington, Ky. Petitioner's principal business was the leasing of real estate and trucks to Allied Delivery Systems, Inc. (hereinafter Delivery). At all times relevant herein, Alvin Wasserman (hereinafter Mr. Wasserman) owned 100 percent of both petitioner and Delivery's outstanding stock.

Delivery and petitioner, as brother-sister corporations, along with other component members of the group of corporations

controlled by Mr. Wasserman and his family, filed a consent to election of multiple surtax exemptions under sections 1562 and 1564 with respect to December 31, 1973,. as part of petitioner's income tax return for the taxable year in issue.

The entire amount of gross rental income reported on petitioner's return for the taxable year in issue, $42,689, was received from Delivery pursuant to a written lease between petitioner as landlord and Delivery as tenant. For the taxable year in issue, petitioner also had interest income of $6,246 and dividend income of $1,342 which amounts were personal holding company income as that term is defined by section 543(a)(1). In that year, petitioner's ordinary gross income was $50,277, adjusted ordinary gross income was $32,228, and adjusted gross income from rents was $24,290. Thus, petitioner's adjusted gross income from rents constituted 50 percent or more of its adjusted ordinary gross income for such year within the meaning of section 543(a)(2)(A). Petitioner paid section 543(a)(2)(B)(i) dividends of $4,000 during the taxable year in issue. As of yearend, petitioner had assets totaling $498,772 including cash of $93,117, stock of $135,773, and bonds of $50,184. Petitioner also had unappropriated retained earnings of $497,772.

Mr. Wasserman did not use the real estate and trucks leased by petitioner to Delivery, except as such use may be deemed to exist under section 543(a)(6) solely from his stockholdings in Delivery.

## OPINION

Section 541 provides that:

SEC. 541. IMPOSITION OF PERSONAL HOLDING COMPANY TAX.

In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the undistributed personal holding company income * * * of every personal holding company * * * a personal holding company tax equal to 70 percent of the undistributed personal holding company income.

In pertinent part, section 542(a) defines a personal holding company as:

(a) GENERAL RULE.—For purposes of this subtitle, the term "personal holding company" means any corporation * * * if—

(1) * * * At least 60 percent of its adjusted ordinary gross income * * * for the taxable year is personal holding company income (as defined in section 543(a)), and

(2) * * * At any time during the last half of the taxable year more than

50 percent in value of its outstanding stock is owned, directly or indirectly, by or for not more than 5 individuals. * * *

The parties herein have stipulated that, if the rental income received by petitioner from the lease of real estate and trucks to Delivery does not fall within the intendment of section 543(a)(6), the petitioner was not a personal holding company for the taxable year in issue. No issue has been made with respect to the reasonableness of the rent.

Section 543(a) sets forth various categories of income which are to be deemed "personal holding company income" and paragraph (6), which is pertinent here, provides that:

(6) USE OF CORPORATION PROPERTY BY SHAREHOLDER.—Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case where, at any time during the taxable year, 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement. * * *

Respondent contends that use of the corporate structure constitutes an "other arrangement" that gives their identical shareholder a right to use the leased property. In *Minnesota Mortuaries, Inc. v. Commissioner*, 4 T.C. 280, 284 (1944), this Court held that the statute[1] referred to an "actual use rather than a use imputed to an individual from the activities or rights of a corporation in which he owns stock." Our opinion made reference to H. Rept. 1546, 75th Cong., 1st Sess. (1937), 1939–1 C.B. (Part 2) 704, 707–708, which explained the purpose of the section as follows:

Subsection (f) includes in personal holding company income amounts received as compensation for the use of, or the right to use, the property of the corporation. However, this rule only applies where during the taxable year of the corporation, 25 percent or more in value of its outstanding stock is owned, directly or indirectly, by an individual leasing or otherwise entitled to the use of the property. It makes no difference whether the right to use the property is obtained by the individual directly from the corporation or by means of a sublease or other arrangement. Since under existing law, this type of compensation is not now included for the purposes of determining whether the corporation meets the 80 per cent test, the taxpayer may fix such compensation in an amount sufficient to bring its other investment income below the 80 per cent test. It has been shown to the committee that this device has been

---

[1] Sec. 353(f), Revenue Act of 1936 as amended by sec. 1, Revenue Act of 1937 was substantially similar to the statute as written in the year in issue.

employed by taxpayers who had incorporated their yachts, city residences, or country houses and had paid sufficient rent to give the corporations enough income from their service to take them out of present section 351. By including this type of income in the definition of personal holding company income, your committee removes this method of tax avoidance.

We also noted that the doctrine of corporate entity is well established in tax law. Thereunder, the acts of a corporation are not imputed to the shareholders so long as there exists a business nexus. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 442 (1934).

We reiterated our interpretation of the statute[2] in *320 E. 47th Street Corp. v. Commissioner*, 26 T.C. 545, 549 (1956). That opinion was reversed and remanded by the Second Circuit (243 F.2d 894, 899 (2d Cir. 1957)). 320 E. 47th Street Corp. was a corporate taxpayer which, due to fortuitous circumstances, had received "unusual income" for the taxable year in issue in the form of interest on a condemnation award in the amount of $20,728.81. Such amount comprised 77.14 percent of the corporation's gross income. The remainder of the corporation's gross income consisted of $6,000 rent received from a corporation having identical shareholders and $143.04 miscellaneous income. For the year here in issue, section 501(a)(1), I.R.C. 1939, defined the term personal holding company, with respect to the 320 E. 47th Street Corp., as any corporation whose gross income included personal holding company income of 80 percent or more. The section defining personal holding company income relevant to the case was section 502, specifically subsections (a), (f), and (g), I.R.C. 1939, thereof. These subsections provided, in pertinent part, that:

SEC. 502. PERSONAL HOLDING COMPANY INCOME.

For the purposes of this subchapter the term "personal holding company income" means the portion of the gross income which consists of:

(a) * * * interest * * *

\* \* \* \* \* \* \*

(f) USE OF CORPORATION PROPERTY BY SHAREHOLDER.—Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case, where, at any time during the taxable year, 25 per centum or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual

---

[2]Then sec. 502(f), I.R.C. 1939.

entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement.

(g) RENTS.—Rents, unless constituting 50 per centum or more of the gross income. For the purposes of this subsection the term "rents" means compensation, however designated, for the use of, or right to use, property * * * but does not include amounts constituting personal holding company income under subsection (f).

Section 223, Revenue Act of 1950, implies an amendment to section 502(f) as follows:

> Section 223. Personal Holding Company Income.—Section 502(f) of the Internal Revenue Code * * * shall not apply with respect to rents received during taxable years ending after December 31, 1945, and before January 1, 1950, if such rents were received for the use by the lessee, in the operation of a bona fide commercial, industrial, or mining enterprise, of property of the taxpayer.

Its application was extended to cover the year in issue. H. Rept. 1353, 84th Cong., 1st Sess. (1955), 1955–2 C.B. 844, and S. Rept. 1242, 84th Cong., 1st Sess. (1955), 1955–2 C.B. 845. Our application of the statute to the facts of that case interpreted the interest on the condemnation award to fall within the definition of personal holding company income under section 502(a) and the rent to fall within that definition under section 502(g). The result of our interpretation was that the corporation, a bona fide lessor of property used by the lessee in a commercial enterprise, was subject to tax as a personal holding company.

The Second Circuit pierced the corporate veil and imputed use of the lessor's property to the lessee's shareholders. Because the two sets of shareholders were identical, that court found that the lessor's shareholders, by use of an "other arrangement," had the use of the property under 502(f). The court then applied the amendment of section 223, Revenue Act of 1950, and found 320 E. 47th Street Corp. to have received rents for the use of its property by a lessee in the operation of a bona fide commercial enterprise. It concluded, at page 899, that the amendment literally excluded the rent from inclusion in the definition of personal holding company income under subsection (f) and that:

> It was the plain intention of the Congress for the period in question to exempt from personal holding company income rents from shareholders in the situation of these two individuals, who leased taxpayer's property through a wholly owned corporation through which they used it to carry on a bona fide commercial or industrial enterprise.

Therefore, the court also excluded the rent from subsection (g)

income. The net result was that the court found the taxpayer was not subject to the personal holding company tax. Subsequently, the Second Circuit Court's opinion in *320 E. 47th Street Corp.* was interpreted in Rev. Rul. 65-259, 1965-2 C.B. 174, as finding that shareholders of the lessee corporation will be imputed as having use of the lessor corporation's property through an "other arrangement."

Respondent now asks the Court to consider *Minnesota Mortuaries, Inc.*, in light of the Second Circuit's opinion in *320 E. 47th Street Corp.* and to impute to the shareholder of the lessee corporation the use of the lessor corporation's property. It can be argued that the language on which respondent relies constitutes dicta in the Second Circuit's opinion. However, no matter what its characterization, we respectfully decline to follow it. We have carefully reconsidered our position and have concluded that we should reaffirm our holding in *Minnesota Mortuaries, Inc.*, which recognized the lessee's corporate identity.

Respondent is obviously offended by the fact that a majority of petitioner's assets consisted of cash or investments in stocks and bonds and the further fact that it had some half a million dollars in unappropriated retained earnings. Respondent goes on to argue that:

> This evidence coupled with the fact that petitioner's sole-shareholder owned and/or controlled numerous other entities performing limited services or functions is indicative of a tax avoidance purpose. The petitioner has offered no evidence indicative of a legitimate corporate function aside from tax avoidance.
>
> Thus, petitioner fits in with the spirit of the personal holding company provisions of section 541 *et.seq.* The issue before this Court is whether petitioner fits into the letter of the personal holding company provisions.

While we agree with respondent that spirituality alone does not tax, our reaction to the facts of this case is that petitioner does not fall even within the spirit of the personal holding company provisions. It is manifest from the legislative history quoted above, and duplicated in section 1.543–1(b)(9), Income Tax Regs., that subsection 543(a)(6) was enacted with personal, nonbusiness type use of corporate property by a shareholder in mind. We are not dealing here with rental of yachts or hunting lodges to shareholders but rather with rental of trucks and real estate used by the lessee in its corporate business. The common shareholder, Mr. Wasserman, did not use the real estate and

trucks leased by petitioner to Delivery except as such use could be imputed through the corporate structure under respondent's interpretation of section 543(a)(6).

Accordingly, our reaction to the facts herein does not motivate us to seek a broadened meaning to section 543(a)(6). We will not impute Delivery's use of business property leased from petitioner to Mr. Wasserman without specifically drawn congressional guidelines.

*Decision will be entered for the petitioner.*

Reviewed by the Court.