## SILVERMAN & SONS REALTY TRUST, Petitioner, Appellee,

v.

## COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellant.

### No. 80–1014.

United States Court of Appeals, First Circuit.

Argued April 9, 1980.
Decided May 15, 1980.

---

Robert S. Pomerance, Atty., U. S. Dept. of Justice, Tax Div., Washington, D. C., with whom M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Richard Farber, Attys., U. S. Dept. of Justice, Tax Div., Washington, D. C., were on brief, for respondent, appellant.

Bernard A. Dwork, Boston, Mass., with whom Barron & Stadfeld, Boston, Mass., was on brief, for petitioner, appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and LOUGHLIN,[*] District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The Commissioner of Internal Revenue appeals from a decision of the United States Tax Court holding that taxpayer— Silverman & Sons Realty Trust ("the Trust")—was not liable for a tax on personal holding company income under Section 541 of the Internal Revenue Code of 1954, 26 U.S.C. § 541. The issue presented is whether rental income received by the Trust from a corporation whose principal shareholders were also the sole shareholders of the Trust constituted personal holding company income within the terms of 26 U.S.C. § 543(a)(6). The resolution of this issue, in turn, depends upon whether the

joint shareholders were, by virtue of their status as stockholders, "individual[s] entitled to the use of the [leased] property" either "directly . . . or by means of a sublease or other arrangement." *Id.* As we agree with the Tax Court that they were not, we affirm.

*The Facts*

Taxpayer is a Massachusetts business trust with transferable shares, treated for federal tax purposes as a corporation. 26 U.S.C. § 7701(a)(3). The principal assets of the Trust during the tax year ending March 31, 1975, were a building acquired in 1957 and a sum of cash, including an interest-bearing certificate of deposit. During the taxable year, the Trust received rental income on its building amounting to $38,900 from Joseph Silverman & Co., Inc., ("the lessee"), a Massachusetts corporation dealing in wholesale floor coverings. The Trust's other income for the year consisted of $13,169 in interest earned on the certificate of deposit.

The Trust was owned in equal shares by two brothers, Donald and Alan Silverman. The Silvermans also owned 73.2 percent of the stock of the lessee, Joseph Silverman & Co., Inc., in equal shares. The remaining 26.8 percent of the lessee's stock was held by six persons who were closely related to Donald and Alan Silverman. *See* 26 U.S.C. § 544(a)(2).

The Commissioner determined that the $38,900 rental income of the Trust constituted personal holding company income within the meaning of Section 543(a)(6), and accordingly determined a deficiency of $6,944 in the Trust's income tax for the taxable year ending March 31, 1975. On September 25, 1979, the Tax Court ruled that no deficiency was due because the rental income did not fall under Section 543(a)(6). This appeal followed.[1]

---

[*] Of the District of New Hampshire, sitting by designation.

1. Jurisdiction and venue lie in this court pursuant to 26 U.S.C. § 7482. Under that provision, we are empowered to review Tax Court deci-

sions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." Section 7482(a). As the parties do not dispute the Tax Court's factual findings, based substantially on stipulation, we are presented with an issue of law

## I.

The personal holding company tax is designed to prevent individuals in high tax brackets from accumulating investment income in a controlled corporation at the flat corporate tax rate. *See Fulman v. United States*, 434 U.S. 528, 530–31, 98 S.Ct. 841, 843, 55 L.Ed.2d 1 (1978). Under Section 541, undistributed personal holding company income is taxed to the personal holding company at a rate of 70 percent.[2] This tax encourages the personal holding company to distribute investment earnings to shareholders for taxation at their individual rates. The tax is imposed only on so-called personal holding companies, defined in Section 542 as corporations at least 60 percent of whose adjusted gross income is personal holding company income, and 50 percent of whose stock is held by five or fewer individuals.[3] Personal holding company income, as

defined in Section 543, includes dividends, interest, certain types of royalties and other forms of passive investment income. Of particular relevance here, it also includes income received for the use of, or right to use, tangible property of the corporation by a principal stockholder of the corporation where the stockholder as an individual is entitled to the use of the property, "whether such right is obtained directly from the corporation or by means of a sublease or other arrangement." Section 543(a)(6).[4]

Here, it is conceded that the Trust was a closely held corporate entity within the meaning of Section 542(a)(2). The Trust was thus liable for the personal holding company tax if more than 60 percent of its gross income for the taxable year consisted of personal holding company income. 26 U.S.C. § 542(a)(1). The interest income of $13,169, comprising about 25 percent of the

---

which we review as we would any other, "with due regard for the Tax Court's expertness in its field." *Chapman v. Commissioner*, 618 F.2d 856 at 859 n.6 (1st Cir. 1980).

**2.** Section 541 provides:

"Imposition of personal holding company tax. In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the undistributed personal holding company income (as defined in section 545) of every personal holding company (as defined in section 542) a personal holding company tax equal to 70 percent of the undistributed personal holding company income."

**3.** Section 542 provides, in pertinent part:

"Definition of personal holding company

(a) General rule.—For purposes of this subtitle, the term 'personal holding company' means any corporation . . . if—

(1) Adjusted ordinary gross income requirement.—At least 60 percent of its adjusted ordinary gross income (as defined in section 543(b)(2)) for the taxable year is personal holding company income (as defined in section 543(a)), and

(2) Stock ownership requirement.—At any time during the last half of the taxable year more than 50 percent in value of its outstanding stock is owned, directly or indirectly, by or for not more than 5 individuals."

(Exceptions not relevant to this case have been omitted.)

**4.** An exception to this rule is made where 10 per cent or less of the corporation's other income is personal holding company income.

The exception clearly does not apply here, as about 25 percent of the Trust's gross income was interest on a certificate of deposit.

Section 543(a)(6), as it existed when this case arose, provided:

"Personal holding company income

(a) General rule.—For purposes of this subtitle, the term 'personal holding company income' means the portion of the adjusted ordinary gross income which consists of:

.　　.　　.　　.　　.

(6) Use of corporation property by shareholder.—Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case where, at any time during the taxable year, 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement. This paragraph shall apply only to a corporation which has personal holding company income for the taxable year (computed without regard to this paragraph and paragraph (2), and computed by including as personal holding company income copyright royalties and the adjusted income from mineral, oil, and gas royalties) in excess of 10 percent of its ordinary gross income."

Section 543(a)(6) was amended by the Tax Reform Act of 1976, Pub.L. No. 94–455, § 2106, 90 Stat. 1902, but its material terms remained unchanged.

Trust's gross income, was admittedly personal holding company income. At issue is the status of the remaining $38,900 in rental income.

Donald and Alan Silverman each owned more than 25 percent of the Trust's shares, making them principal shareholders of the taxpayer. It is also conceded that the lessee corporation—in which the Silvermans were major stockholders—had the right to use the Trust's real property by way of a lease which provided rental income to the Trust. The question remaining is whether the Silvermans' status as stockholders—even assuming they had effective control of the lessee corporation—was sufficient in itself to impute to them as individuals the "right to use" the subject property.

## II.

The predecessor of current Section 543(a)(6) was added to the Internal Revenue Code in 1937 to close a tax loophole that had developed in the personal holding company provisions of the Revenue Act of 1934. Under Section 351(b) of that Act, the personal holding company tax was imposed only where at least 80 percent of the corporation's gross income was personal holding company income. Since rent was not considered personal holding company income, it was possible for a corporation to avoid the tax if it derived more than 20 percent of its income from rent. This anomaly led some taxpayers to transfer title to yachts, hunting lodges and other items of personal property to their controlled investment corporations, so that by leasing back the items, they could generate rental income sufficient to avoid the personal holding company tax. See H.R.Rep.No. 1546, 75th Cong., 1st Sess. 6 (1937) (1939–1 Cum.Bull. (Part 2) 704, 707–08). The legislative history makes clear that Section 351(b) was enacted specifically to close this loophole by including in personal holding company income amounts received for the use of tangible property by any individual who was a principal shareholder in the would-be personal holding company. *Id.*

The question posed in the present case first arose before the Tax Court in *Minnesota Mortuaries, Inc. v. Commissioner*, 4 T.C. 280 (1944). Two prospective partners in the funeral direction business formed separate corporations to hold title to the funeral homes' real property and to manage and operate the business. Each partner owned half of the realty corporation's stock; the realty corporation in turn owned 85 percent of the operating corporation's stock with the remainder in trust for the employees. The operating corporation paid rent to the realty corporation for use of the buildings in which the business was operated, and the issue was whether this rent was personal holding company income under Section 351(b). The Tax Court held it was not, since the stockholders did not, as individuals, have the right to use the property. "The general principle is . . . well established that an individual, as a stockholder of a corporation, has no right, title, or interest in, or right to use the corporate property." 4 T.C. at 285. *See also New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 442, 54 S.Ct. 788, 791, 78 L.Ed. 1348 (1934) (general rule that corporation and stockholders are considered separate entities for tax purposes).

The Tax Court applied the same reasoning in *320 East 47th Street Corp. v. Commissioner*, 26 T.C. 545, 549 (1956), but was reversed by the Second Circuit, which held that rental income from a lessee corporation whose shareholders were identical with those of the lessor did fall within the definition of personal holding company income because the individual shareholders had the right to use the property by way of an "other arrangement." 243 F.2d 894 (2d Cir. 1957). The Second Circuit emphasized that the Congressional purpose to close the tax loophole might be frustrated if the statute could be circumvented "by the mere creation of a second corporation which would pay the rent instead of the individual shareholder." *Id.* at 898.[5] This holding was

**5.** Ironically, the Second Circuit's interpretation of the statute in *320 East 47th Street*, now

urged by the Treasury, resulted in a benefit to the taxpayer in that case. The Tax Court had

**318**

reaffirmed without further discussion in *Hilldun Corp. v. Commissioner*, 408 F.2d 1117, 1121 (2d Cir. 1969).

In *Allied Industrial Cartage Co. v. Commissioner*, 72 T.C. 515 (1979), the Tax Court confronted the question whether, in light of *320 East 47th Street*, it should abandon the rule of *Minnesota Mortuaries* and impute to individual shareholders the lessee corporation's right to use the leased property. After carefully reconsidering its position, the Tax Court declined to follow *320 East 47th Street*, arguing that, at least where a business purpose exists for the lease arrangement, it is consistent with Congressional intent to recognize the lessee's separate corporate identity rather than to impute to the shareholders the corporation's legal rights. "We are not dealing here with rental of yachts or hunting lodges to shareholders," the court said, "but rather with rental of trucks and real estate used by the lessee in its corporate business." 72 T.C. at 520.[6]

The Tax Court treated the present case as raising the identical issue posed in *Allied Industrial* and entered a decision for taxpayer on that basis. The Commissioner argues, in effect, that the legal issue in *Allied Industrial* was wrongly decided, and that the Tax Court should have followed the lead of the Second Circuit. The thrust of the Commissioner's argument is that Congress, by providing that the "right to use" property could be obtained directly "or by means of a sublease or other arrangement," implicitly meant to cover the situation where the shareholder has access to property through his control of a lessee corporation. The opposite result, it is argued, would facilitate tax avoidance through interposition of sham corporations as lessees.

▮ Like the Tax Court, we are unpersuaded. Where the lessee corporation is established for tax avoidance purposes—as where the leased property consists of personal or recreational property or where otherwise it is being placed at the disposal of the shareholders—this fact should be readily ascertainable, and appropriate measures may be taken, including piercing the corporate veil, to see that the Congressional scheme of taxation is not frustrated. *Cf. New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 442, 54 S.Ct. 788, 791, 78 L.Ed. 1348 (1934). Such is manifestly not the case here. The lessee corporation, Joseph Silverman & Co., Inc., is engaged in the wholesale floor covering business; there is not the slightest evidence the subject property is being held for the individual use of Donald and Alan Silverman, or that the corporate lessee is a subterfuge to facilitate personal use of the property by them. As majority shareholders, Donald and Alan Silverman have no legal entitlement to use the corporate property in their individual capacities. 1 Fletcher's Cyclopedia of Corporations § 31 at 132–33 (1974). Each of them owes to the other, and to the minority stockholders, certain fiduciary duties which limit their capacity lawfully to convert corporate property to their own individual pursuits. A bona fide corporation is not the equivalent of a "sublease or other arrangement" for the simple reason that whereas the latter would legally authorize personal use, the former does not. Nor is there any showing that these shareholders have, in fact, authorized corporate property to be used other than for a proper corporate and business purpose. We therefore do not find the Silvermans to be "individual[s] entitled to the use of the property," and thus do not find the rental income to be personal holding company income.

held that the rent was not covered by the analogous provision to Section 543(a)(6), but that, considered simply as rent, without regard to its source, it was nonetheless personal holding company income because it constituted less than 50 percent of the corporation's gross income. *Cf.* 26 U.S.C. § 543(a)(2). *See* 26 T.C. at 548–49. By construing the predecessor of Section 543(a)(6) to cover the rental income, the Second Circuit made the income eligible for

a then-available statutory exemption for rent received for property used in the operation of a bona fide business. 243 F.2d at 899. In the present case, the tables are turned, with the Treasury contending Section 543(a)(6) should cover the income, and the taxpayer seeking to avoid its application.

**6.** We are informed that *Allied Industrial* is presently being appealed in the Sixth Circuit.

The Commissioner argues that the Tax Court, in reaching its decision, mistakenly relied on a distinction between those rental arrangements having a business purpose and those having only a tax-related purpose. This distinction, it is argued, is a false one, because the statute has long been interpreted as reaching both types of arrangements where the lease is to an individual or partnership. *See, e. g., Hatfried, Inc. v. Commissioner,* 162 F.2d 628, 630–31 (3d Cir. 1947). Whatever the force of this argument in other contexts, we do not think it answers the question before us. The issue is whether the statute is to be construed so as to impute to individuals the property rights of a corporation in which they own stock. Absent explicit Congressional guidance, this is a step any court should be reluctant to take. *See New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 442, 54 S.Ct. 788, 791, 78 L.Ed. 1348 (1934). We agree with the Tax Court that a relevant consideration is whether the step is necessary to prevent a scheme of tax avoidance. Where, as here, there is no showing the arrangement is other than a bona fide business transaction, we see no necessary implication that Congress intended to impose a personal holding company tax on the lessor corporation.

We are also concerned by the open-ended nature and somewhat sketchy outlines of the Commissioner's position. Eight years after the Second Circuit's decision in *320 East 47th Street,* the Commissioner promulgated a Revenue Ruling adopting the position that use of leased property would be imputed to *any* stockholder of the lessee corporation who was also a principal stockholder of the lessor. Rev.Rul. 65–259, 1965–2 Cum.Bull. 174. At oral argument, counsel for the Commissioner indicated that this extreme version of the rule has been abandoned, but was understandably unable to specify what degree of "control" over the lessee corporation was required in order to impute the corporation's right to the shareholder. Without Congressional guidance, we are left in the dark as to whether the proper test is ownership of all the lessee's stock, a majority of the stock, or only enough to give the shareholder effective control of the corporation's actions. Prudence dictates that we not adopt a rule of such uncertain scope and unforeseeable consequences. The Tax Court's interpretation of the statute conforms most nearly with the statutory language and is perfectly reasonable. There is no indication it will signally promote or facilitate tax avoidance.

*The decision of the Tax Court is affirmed.*