MAGNOLIA SURF, INC., Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.

No. 80–1137.

United States Court of Appeals, First Circuit.

Argued Sept. 5, 1980.

Decided Dec. 31, 1980.

---

**12**

Gregory C. Demakis, Lynn, Mass., for petitioner, appellant.

George L. Hastings, Jr., Atty., Tax Division, Dept. of Justice, Washington, D. C., with whom M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Robert T. Duffy, and Helen A. Buckley, Attys., Tax Division, Dept. of Justice, Washington, D. C., were on brief, for respondent, appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and KEETON,* District Judge.

KEETON, District Judge.

The taxpayer, Magnolia Surf, Inc. ("Magnolia Surf"), appeals from a decision of the United States Tax Court holding that certain personal property of a restaurant business it acquired on April 1, 1971, pursuant to a purchase and sale agreement entered into on February 24, 1971, was not eligible for the investment tax credit established by section 38 for property described by sections 46 through 50 of the Internal Revenue Code of 1954, as those provisions were in effect in 1971.[1] For the relevant period, 26 U.S.C. § 50(a)(2)(B) allowed a credit for otherwise qualified investment property that was "acquired by the taxpayer . . . after March 31, 1971, and before August 16, 1971, pursuant to an order which the taxpayer establishes was placed after March 31, 1971." The issue presented is whether the taxpayer acquired the restaurant property pursuant to an "order" placed after March 31, 1971, as

the term is used in section 50(a)(2)(B). As we agree with the Tax Court that the property was ordered before March 31, 1971, we affirm.

## I.

The relevant facts are not in dispute. On February 24, 1971, Christopher Sabanty entered into a purchase and sale agreement to acquire, for himself or his nominee, all of the assets of a restaurant business owned by Albert and Elizabeth Lazisky and by their wholly owned corporation, which was also known as Magnolia Surf, Inc. ("Old Magnolia"). Pursuant to the agreement, on March 11, 1971 Sabanty formed Magnolia Surf as a Massachusetts corporation.

The purchase and sale agreement required the sellers to deliver a bill of sale for all of the restaurant's personal property ("the restaurant property") to the buyer at the closing. Although the agreement contemplated that closing would occur on March 22, 1971, the closing and delivery of the bill of sale did not take place until April 1, 1971.

In its federal income tax returns for the taxable years ending March 31, 1972 and March 31, 1974,[2] Magnolia Surf claimed an investment tax credit totaling $3500 for the restaurant property. The Commissioner determined that the property did not qualify for the investment credit, and accordingly issued a notice of deficiency for the taxable years in question. On November 23, 1979, the Tax Court entered its decision upholding the Commissioner, finding that the February 24, 1971 purchase and sale agreement was a valid contract, and that in light of that fact and the delivery of the bill of sale on April 1, 1971, "it is reasonable to assume that the 'order' . . . must have been placed

---

\* Of the District of Massachusetts, sitting by designation.

1. Sections 49 and 50 were repealed by Pub.L. 95–600, § 312(c), 92 Stat. 2826 (1978).

2. Because the credit exceeded the amount that taxpayer could deduct from taxes due for the

taxable year ending March 31, 1972, 26 U.S.C. § 46(a), and because taxpayer had no income tax liability for the taxable year ending March 31, 1973, taxpayer elected to carry over the unused portion of the credit into the taxable year ending March 31, 1974.

before March 31, 1971." 72 T.C. 495, 506 (1979). This appeal followed.[3]

## II.

Since its adoption in 1961, section 38(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 38(a), has allowed an investment credit against income taxes for a portion of the cost of purchasing qualified property. Whether a property is eligible, and if so, the amount of the credit allowed, is determined pursuant to sections 46 through 50 of the Code. 26 U.S.C. §§ 46–50. In 1969 Congress terminated the credit, for what was to be a relatively brief period, by enacting section 703(a) of the Tax Reform Act of 1969, Pub.L. 91–172, 83 Stat. 487. Section 703(a) added section 49 to the Internal Revenue Code, which made the investment credit unavailable for property built or acquired after April 18, 1969.

Because of the condition of the national economy, Congress reinstated the investment credit in 1971 by adding section 50 to the Code. Revenue Act of 1971, Pub.L. 92–178, § 101(a), 85 Stat. 498 (1971). Section 50 provided:

SECTION 50. RESTORATION OF CREDIT.

(a) *General Rule.*—Section 49(a) (relating to termination of credit) shall not apply to property—

(1) the construction, reconstruction, or erection of which—

(A) is completed by the taxpayer after August 15, 1971, or

(B) is begun by the taxpayer after March 31, 1971, or

(2) which is acquired by the taxpayer—

(A) after August 15, 1971, or

(B) after March 31, 1971, and before August 16, 1971, pursuant to an order which the taxpayer establishes was placed after March 31, 1971.

The parties agree that Magnolia Surf acquired the restaurant property on April 1, 1971. Thus, if the property is to qualify for the investment credit, the taxpayer must establish that it was obtained pursuant to an order placed after March 31, 1971. 26 U.S.C. § 50(a)(2)(B).

Three different statements of the meaning of "order" have been proposed. First, the taxpayer urges that an "order" as the term is used in section 50(a)(2)(B) is to be distinguished from a "contingent order," and that in the present case nothing more than a "contingent order" had been made before April 1, 1971 because closing and delivery of the bill of sale was subject to the satisfaction of certain conditions discussed in Part IV, *infra.* Second, in the instant case, the Tax Court held that in section 50(a)(2)(B), Congress intended to use "order" as it is commonly understood in commercial practice, *i. e.,* as an offer to purchase goods. 72 T.C. 495, 505. *See* U.C.C. § 2-206(1)(b) ("an order or other offer to buy goods . . ."). The Commissioner has adopted the same position with respect to section 50. Rev.Rul. 72–573, 1972–2 C.B. 12 ("For purposes of this section, a taxpayer's offer to purchase goods . . . constitutes an order"). Third, it may be argued that "order" as used in section 50(a)(2)(B) should be defined in the same manner as that adopted by the Treasury for section 48(a)(7)(B)(ii), and upheld by the Second Circuit in *Maid of the Mist Corp. v. Commissioner,* 594 F.2d 919 (1979):

An order is any directive, written or oral, to another person reasonably designed to effect the acquisition of property at a later date. An order need not be a binding contract.

Treas.Reg. § 1.48–1(o)(2)(i) (1972).

Before considering a choice among these proposed meanings, or a need to choose

---

**3.** Jurisdiction and venue lie in this court pursuant to 26 U.S.C. § 7482, which authorizes us to review Tax Court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." § 7482(a). There being no dispute about the Tax Court's factual findings, which were based substantially on stipulations, "we

are presented with an issue of law which we review as we would any other, 'with due regard for the Tax Court's expertness in its field.' " *Silverman & Sons Realty Trust v. Commissioner,* 620 F.2d 314, 315–16 n. 1 (1st Cir. 1980) quoting *Chapman v. Commissioner,* 618 F.2d 856, 859 n. 6 (1st Cir. 1980).

among them, we first examine the legislative history bearing upon the meaning of "order."

### III.

The first announcement that the Administration was considering the reinstatement of a tax credit to stimulate investment was made on April 1, 1971. *See* 1 House Hearings Before the Committee on Ways and Means on the Tax Proposals Contained in the President's New Economic Policy, 92d Cong., 1st sess. 105 (comments of Chairman Mills and Secretary Connolly) [hereinafter cited as *House Hearings*]. After consultation with the ranking members of the Congressional tax-writing committees, the Secretary of the Treasury issued public assurances that the proposed investment credit would be available for property ordered after April 1, 1971. H.R.Rep.No.92–553, 92d Cong., 1st sess. 5 [hereinafter *House Report*], *reprinted in* [1971] U.S.Code Cong. & Ad.News, pp. 1825, 1829. The Chairman of the House Ways and Means Committee made similar public statements. 1 *House Hearings, supra* at 105. These assurances were "given to avoid further deferment of investments which were already at an unduly low level." *House Report, supra* at 5, [1971] U.S.Code Cong. & Ad.News, p. 1829.

During the hearings on the Administration's proposed investment credit, the Chairman of the Ways and Means Committee and the Secretary of the Treasury expressed a desire that the Committee's bill should contain a provision fulfilling their commitment to make the credit apply to qualified property purchased after the proposal was publicly announced. Their concerns resulted in section 50(a)(2)(B), which extended the credit to qualified property acquired "pursuant to an order ... placed after March 31, 1971." According to the House Report, the provision was enacted "... to avoid discrimination against those who *took action on or after that date to acquire* eligible assets on the basis of assurances as to the availability of the credit made by the Secretary of the Treasury ...." *House Report* at 5, [1971] U.S.Code Cong. & Ad.News, p. 1829 (emphasis supplied).

In *Maid of the Mist Corp. v. Commissioner, supra*, the Second Circuit was called upon to consider the meaning of "order" in section 48(a)(7)(B)(ii) of the Internal Revenue Code, 26 U.S.C. § 48(a)(7)(B)(ii), a provision closely related to section 50(a)(2)(B), and also enacted as part of the Revenue Act of 1971. Section 48(a)(7)(A) provides that otherwise qualified property is ineligible for the investment credit if it is completed outside the United States or if less than 50 percent of its basis is attributable to value added within the United States. Section 48(a)(7)(B)(ii) excepts from section 48(a)(7)(A) all property

> which is acquired pursuant to an order placed on or before [December 20, 1971] ... unless acquired pursuant to an order which the taxpayer establishes was placed before August 16, 1971.

The Second Circuit reviewed the legislative history of the Revenue Act of 1971 and, in particular, of section 48(a)(7)(B)(ii), and upheld the definition of "order" contained in the regulation. In part, the court relied on a House Ways and Means Committee Report accompanying Pub.L. 89–800, 80 Stat. 1508, which suspended the investment tax credit then in effect for property acquired pursuant to an order placed between October 10, 1966 and January 1, 1968. The Committee Report defined "order" in a manner substantially identical to the Treasury Regulation:

> Any directive, written or oral, to another person reasonably designed to effect the acquisition of property at a later date, constitutes an order.

H.Rep.No.2087, 89th Cong., 2d sess. 30 (1966).

In addition, the court noted that, like section 50(a)(2)(B), section 48(a)(7)(B)(ii) was the product of a Congressional motivation to protect "taxpayers who ordered property ... after March 31, 1971, in reliance on the Secretary of the Treasury's statements," without knowledge of the limits on the scope of the credit that Congress eventually enacted. *Maid of the Mist, su-*

*pra* at 922, n.3, *quoting* S.Rep.No.92–437, 92d Cong., 1st sess. 26, *reprinted in* [1971] U.S.Code Cong. & Ad.News, p. 1933.

### IV.

With this legislative history and the three proposed meanings of "order" in view, we examine the terms of the February 24, 1971, purchase and sale agreement. Under that agreement the taxpayer obtained the restaurant property, and the buyer and seller agreed to close the transaction and deliver the bulk of the purchase money in return for a deed and bill of sale on March 22, 1971. Taxpayer contends that the agreement does not constitute an "order" because delivery of the bill of sale was subject to four "contingencies." They are:

(1) The sale was conditioned upon the approval of the Licensing Board of the Town of Manchester and the Alcoholic Beverage Commission and the issuance to the buyer of a liquor license. Buyer promised to apply for the transfer of seller's license, and both buyer and seller agreed to "diligently prosecute such application."

(2) The agreement was subject to the ability of the buyer to obtain mortgage financing for a certain amount and a certain period at a rate less than an agreed maximum.

(3) If a fire or other casualty interrupted or curtailed the seller's business before closing, the buyer had the option of terminating the agreement.

(4) In addition, taxpayer contends that the purchase and sale agreement was contingent upon the production by the selling corporation of a waiver of, or compliance with, Mass.Gen.Laws ch. 63, § 76. However, the agreement simply states that at the closing the seller must deliver to the buyer "a waiver of, or compliance with ... [that statute]," along with the relevant deed, bill of sale, and several other corporate documents. No circumstances suggesting a relief from the duty to produce the

waiver or compliance are apparent from the agreement.

It is clear from the recitation of these "contingencies" and from a reading of the purchase and sale agreement that by February 24, 1971, the seller and buyer had committed themselves to the sale of the restaurant property.[4] Although the agreement contemplated circumstances under which the closing would not take place, the contract gave neither party complete control over those circumstances. Thus, the purchase and sale agreement was far more than an offer to buy the restaurant property or a "directive ... reasonably designed to effect the acquisition of property at a later date." It was a binding contract subject to several conditions subsequent. *See* 5 Williston on Contracts, § 667 (Jaeger ed. 1961).

Nowhere in the words of the statute or in the legislative history is there support for interpreting "order" in a way that would sustain a conclusion that, because a binding contract contains conditions subsequent, no "order" is placed until all conditions subsequent have been satisfied. We therefore reject taxpayer's contention that we should adopt the first of the three meanings stated in Part II, *supra*. Under either the second or the third proposed definition of "order," if indeed there is a substantive rather than merely stylistic difference between them, it is clear that because the purchase and sale agreement was executed on February 24, 1971, an "order" was placed before March 31, 1971.

*The decision of the Tax Court is affirmed.*

---

**4.** Paragraph 22 of the agreement states: "This agreement ... is to take effect as a sealed instrument and sets forth the entire agreement between the parties relative to the subject mat-

ter hereof and may be cancelled or modified only by a written instrument executed by all parties."