SAMUEL D. BAXTER AND NANCY BAXTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baxter v. Commissioner
Docket No. 19968-80.
United States Tax Court
T.C. Memo 1982-515; 1982 Tax Ct. Memo LEXIS 225; 44 T.C.M. (CCH) 1066; T.C.M. (RIA) 82515; September 13, 1982. Brian J. Van Voris, for petitioners. Steven R. Guest, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent *226 determined a deficiency in the amount of $8,361 in petitioners' 1977 Federal income tax. In the notice of deficiency, respondent determined (1) that petitioners failed to recognize a long-term capital gain from the sale of a house and that this gain was subject to the minimum tax prescribed by section 56[1] and (2) that petitioners were not entitled to loss deductions from the rental of two properties. Petitioners apparently concede that one of the rental losses (on the 278 Chester Street property) was properly disallowed because petitioners did not own this property in 1977. The other issues depend upon the resolution of a factual question: Whether petitioners owned property located at 3180 San Jose Avenue when it was sold in 1977, or whether they made an oral gift of it to their daughter in 1975. [2]
*227 FINDINGS OF FACT In 1977, petitioners Samuel D. and Nancy Baxter were husband and wife, residing at 296 Chester Street, Daly City, California. They were divorced in 1980. When they filed their petition in the instant case, Samuel D. Baxter (Mr. Baxter), resided at 259 Moscow Street, San Francisco, California, and Nancy Baxter (Mrs. Baxter), resided at 296 Chester Street, Daly City, California. They timely filed a joint Federal income tax return for 1977 with the Internal Revenue Service Center, Fresno, California. In February 1972, petitioners purchased residential property located at 3180 San Jose Avenue, San Francisco, California (the San Jose Avenue property), at a cost of $23.547. Petitioners financed part of the purchase price with a $17,600 loan from Bay View Federal Savings and Loan Association (Bay View), a San Francisco bank. The promissory note evidencing the loan called for monthly installment payments of $122 and was secured by a deed of trust. The deed of trust contained a "due on sale" clause, making the entire principal and interest immediately due at the bank's option, should the property be sold without the bank's consent. [3]
*228 Petitioners never lived in the San Jose Avenue property; instead, Mr. Baxter's brother occupied it initially. The brother paid petitioners a monthly sum equal to the amount required to cover the monthly mortgage payment plus taxes and insurance. Petitioners' daughter, Mary, married in June 1975, and she and her new husband, Gerald Kaleiki (the Kaleikis), moved into the San Jose Avenue property at that time. As rent, they paid petitioners sums equal to the monthly mortgage payments, plus some other expenses. Petitioners paid other expenses, including the Bay View mortgage payment. The Kaleikis also paid for some repairs, including plumbing work to clear a drain pipe, and for such items as repainting the house, revarnishing the kitchen, and acquiring rugs. Gerald Kaleiki (Mr. Kaleiki) had been employed approximately 6 months when the Kaleikis were married and in 1975, the Kaleikis earned a total of approximately $1,200 to 1,500 a month. From its purchase in February 1972 until its sale in September 1977, record title to the San Jose Avenue property remained in petitioners' names as joint tenants. In or shortly before August 1977, Annie Jacob, a realtor, obtained a listing *229 for the exclusive authorization and right to sell the San Jose Avenue property. The listing document, dated August 16, 1977, was signed by petitioners as sellers. It referred to the Kaleikis as occupants, and deside their name a mark ("x") was placed in a box designed to designate the "owner" rather than in the box labelled "tenant." On the line marked "1st D T" (presumably first deed of trust) appear the notations "$16,000 at $122. 00 mo. at 9% * * * Lender Bay View." Under date of August 24, 1977, Guillermo, Gracila, and Maria Sanchez, made an offer to purchase the San Jose Avenue property for $54,000. On the same date, petitioners signed an "Acceptance" of the offer "subject" to an "attached counter offer." The counter offer, also dated August 24, 1977, was signed by the Kaleikis and petitioners under the notation "Accepted by Sellers." Other related documents (a settlement statement, an application for title insurance, and a grant deed dated September 27, 1977), refer to Samuel D. Baxter or to Samuel D. and Nancy Baxter as sellers. In September 1977, the Kaleikis purchased residential property located at 278 Chester Street, Daly City, California (the 278 Chester *230 Street property), quite near petitioners' residence. The net proceeds of the San Jose Avenue property (after payment of the Bay View note) were applied toward the purchase price of the 278 Chester Street property. In a petition for the dissolution of the Kaleikis' marriage, filed April 16, 1981, no debts to petitioners were listed. Title to the 278 Chester Street property was initially taken in the names of Gerald and Mary Kaleiki, but by a grant deed dated March 11, 1978, the Kaleikis conveyed title of the Chester Street property to themselves and petitioners. On petitioners' joint Federal income tax returns for 1975 and 1976, prepared by H & R Block, and for 1977, prepared by an accountant named Asuncion, deductions were taken for losses from the rental of the San Jose Avenue property computed as follows: 1975
1976
1977
Rental Income
$2,760
$1,464
$1,350
Deductions: Depreciation
1,000
[1]
[2]
Interest
1,227
1,108
736
Taxes
584
651
432
Insurance
54
130
Plumbing
30
Repairs
100
Miscellaneous
20
Total Deductions
$2,915
$1,759
$1,398
Profit or Loss
($155)
($295)
($48)
*231 On their 1977 return, petitioners also claimed a rental loss of $636 on the 278 Chester Street property purchased by the Kaleikis (rental income of $600, deductions of $703 in interest, $203 in taxes and licenses and $330 in depreciation). Petitioners reported no gain on the sale of the San Jose Avenue property, apparently characterizing this sale and the purchase of the 278 Chester Street property as a like-kind exchange, entitling them to deferral. See sec. 1031. [4] Petitioners now concede that this characterization is erroneous. OPINION Section 61(a) sweeps into gross income "all income from whatever source derived," and such income includes gain realized on the sale or exchange of property. Sec. 1.61-6(a), Income Tax Regs. The parties agree that gain was realized on the *232 sale of the San Jose Avenue property, and the question is whether that gain was taxable to petitioners or to the Kaleikis (who are not before the Court). The answer depends upon the ownership of the property from which the income was derived at the time of the sale. Petitioners contend that the gain is not taxable to them because they did not own the property when it was sold; they had, they allege, made an oral gift of the property to their daughter, Mrs. Kaleiki, upon her marriage in June 1975. Respondent argues that petitioners have failed to prove that the alleged oral gift was made and that, if made, it was insufficient to convey ownership of the property under California law. [5]
*233 The courts have repeatedly defined the essential elements of a gift to include: (1) a donor competent to make a gift; (2) a donee, capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter inpraesenti; (4) the irrevocable transfer of the present legal title and of dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery to the donee of the subject of the gift or of the most effective means of commanding the dominion of it; and (6) acceptance of the gift by the donee. Estate of Hite v. Commissioner,49 T.C. 580, 594 (1968); see also Guest v. Commissioner,77 T.C. 9, 16 (1981); Estate of Lynch v. Commissioner,35 T.C. 142, 150 (1960); Weil v. Commissioner,31 B.T.A. 899, 906 (1934), affd. 82 F.2d 561 (5th Cir. 1936). Petitioners have shown neither a clear and unmistakable *234 intention to divest themselves of title, dominion, and control of the San Jose Avenue property nor the irrevocable transfer of the property to their daughter when she was married in June 1975. The record is clear that legal title was at all pertinent times vested in petitioners; at no time did they execute a deed or any other paper purporting to convey the property to Mrs. Kaleiki. They continued to maintain dominion and control over the property. Nor are we convinced that there was any oral agreement or understanding irrevocably transfering ownership of the property. There is no evidence that petitioners filed a gift tax return reporting the gift in 1975 or at any time and, although Mrs. Kaleiki testified as a witness, there is no suggestion that she and her husband reported or paid income tax on the gain from the sale of the property in 1977 or at any time. For 1975, 1976, and 1977, petitioners' income tax returns show that they rented the San Jose Avenue property, received rent for its use, and claimed loss deductions each year for the excess of certain expenses and deductions over the reported rental income. [6] Indeed, as stated in our findings, their 1977 income tax return *235 indicates that they sold the property at a profit of $33,513, bought another house, and reduced their basis in the new house by the amount of profit from the San Jose Avenue property, apparently on the theory that the transaction involved an exchange of property of like kind. While this treatment is clearly erroneous, we think it highly significant that in attempting to avoid immediate taxation on the gain from the sale of the San Jose Avenue property, petitioners represented that they owned the San Jose Avenue property prior to its sale. Although not conclusive, these representations in petitioners' income tax returns constitute admissions that petitioners continued to own the San Jose Avenue property until its sale in 1977, well after the gift was allegedly made in 1975. Waring v. Commissioner,412 F.2d 800, 801 (3d Cir. 1969), affg. a Memorandum Opinion of this Court; Campagna v. United States,290 F.2d 682, 684 (2d Cir. 1961). *236 Petitioners' only explanation of these admissions is a charge that the accountants (H & R Block for 1975 and 1976 and Mr. Asuncion for 1977) erred. We are fully aware that there are errors in at least one of petitioners' income tax returns. [7] But a return prepared ordinarily would have no knowledge of the ownership or lack of ownership of real property or the amount of rental income or expenses derived from such property. The information included in the returns, we infer, came from petitioners, and Mr. Baxter's repeated denials on the witness stand of any recollection of his conversations with the return preparers add weight to that inference. After all, he is a well-educated, intelligent individual holding a responsible position with RCA Global Communications; he knew in 1975, 1976, and 1977 whether he owned and rented the San Jose Avenue property and was fully capable of conveying the correct information to the return preparer. *237 The detailed information shown on petitioners' 1975, 1976, and 1977 returns, moreover, conflicts with the testimony relied on by petitioners to establish that petitioners gave the San Jose Avenue property to their daughter, and thus undermines the credibility of that testimony. Petitioners and Mrs. Kaleiki testified that the Kaleikis paid for repairs, taxes, and insurance on the property; yet all three of these items are deducted on petitioners' 1977 return, and taxes are deducted in 1976. Petitioners and Mrs. Kaleiki testified that for convenience the Kaleikis paid the taxes and other items to petitioners and petitioners transmitted the payments to the appropriate payees; yet for 1976, the only full year during which the Kaleikis occupied the house, the amount reportedly paid as tax, though deducted by petitioners, is not included in the reported rental income (the "rental income" of $1,464 equals the mortgage payments (12 X $122) for the year). In fact, on the 1976 return, they took no depreciation on the San Jose Avenue property, noting that it was "rented to relative--not for profit." We feel more confident in accepting as true these representations in the income tax returns *238 than the oral testimony that petitioners gave the house to Mrs. Kaleiki in June 1975. Moreover, most of the papers the parties signed when the San Jose Avenue property was sold confirm that petitioners owned it in 1977 when it was sold. The listing with the real estate agent is signed by petitioners as sellers; the purchasers' offer was accepted by petitioners "subject to attached counter offer"; the settlement statement shows Mr. Baxter as the seller; the certificate of title as of August 25, 1977, shows petitioners as joint tenant owners, subject only to their deed of trust to Bay View; and the deed to the purchasers was signed only by petitioners as grantors. Outstanding on the property at that time was a fire insurance policy in petitioners' name; if petitioners had given the property to Mrs. Kaleiki in June 1975, they had taken out and carried a policy on property in which they had no insurable interest. Petitioners argue that the documents retained their names because the deed of trust from Bay View contained a "due on sale" clause which they did not want to activate, and that the Kaleikis would not have been able to obtain a mortgage because of their rather precarious *239 financial circumstances. Therefore, they assert, petitioners kept all records in their names after they gave the San Jose Avenue property to the Kaleikis. They point to the real estate listing form (identifying the occupants, the Kaleikis, as owners rather than tenants) and the counter offer (bearing the Kaleikis' as well as the petitioners' signatures under the notation "Accepted by Sellers") as showing that the Kaleikis were the owners at the time of sale in 1977. In the face of all the evidence to the contrary--the 1975, 1976, and 1977 tax returns, the inconsistent testimony, the numerous documents indicating petitioners' dominion and control--we conclude that these two documents and petitioners' explanations are not sufficient to carry petitioners' burden of showing a June 1975 gift. We think respondent may be correct that petitioners intended to, and did, give the Kaleikis the net proceeds of the sale of the San Jose Avenue property on the condition that they use the proceeds to buy another house. The Kaleikis did buy the 278 Chester Street house in their names, and the net proceeds of the San Jose Avenue house were applied on the purchase price. [8] The testimony of petitioners' *240 only objective witness, the real estate agent, can be fairly interpreted to accord with this theory. [9]A gift and assignment of the proceeds of the sale do not relieve petitioners of tax thereon. E.g., Salvatore v. Commissioner,434 F.2d 600 (2d Cir. 1970), affg. a Memorandum Opinion of this Court. *241 Petitioners have failed to prove a "clear and unmistakable intention" to make an "irrevocable transfer" of dominion and control of the San Jose Avenue property in 1975 or at any time prior to its sale in 1977. Estate of Hite v. Commissioner,supra at 594. We hold, therefore, that respondent correctly determined that they owned the property in 1977, and are taxable on the gain from its sale in that year. Due to concessions, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect in the tax year in issue, unless otherwise indicated. ↩
2. Respondent concedes that, if we find that petitioners owned the San Jose Ave. property in 1977, they are entitled to a rental loss deduction in the amount of $48. Petitioners do not address the minimum tax issue and, apparently, they concede the applicability of sec. 56↩ if we find that they owned and are therefore taxable on the capital gain from the sale of the property in question in 1977.
3. The clause read as follows: In the event of a sale or transfer, including a sale under conditional sales contract, of the real property covered by the Deed of Trust securing this note, without the written consent of the holder of this note, the entire balance of the principal and interest shall, at the option of the holder hereof, become immediately due and payable.↩
1. On Schedule E of the 1976 return, the statement of depreciation listed depreciation in the amount of $1,000, but no depreciation deduction was taken. The statement contains the notation "Rented to Relative--Not for Profit." ↩
2. On Schedule E of the 1977 return, petitioners took no depreciation deduction on the San Jose Ave. property, noting "Sold 9/77--No Depreciation taken in Year of Sale."↩
4. In a document headed "Statement of Sale and Exchange of Rental Property," petitioners computed their "profit" from the sale of the San Jose Ave. property at $33,513, and reduced the basis (equal to the purchase price of $71,762) of their "new property" by such "Deferred Profit."↩
5. The parties have devoted much of their briefs to arguing the enforceability of the alleged oral gift agreement under the California Statute of Frauds. Cal. Civ. Code sec. 1091 (West 1954). This suit, however, is not a contest between petitioners and the Kaleikis, and we do not think that the Government may invoke the statute of frauds in the circumstances of this case. See Glazer Steel Corp. v. United States,181 Ct. Cl. 1063, 1073, 388 F.2d 990, 996, fn. 2 (1967); Wheelock v. Commissioner,16 T.C. 1435, 1442 (1951); Fraser v. Commissioner,64 T.C. 41, 47↩ (1975). The Government may not tax income to one who has entered into an agreement in good faith whereby he has actually surrendered the property that produced the income proposed to be taxed.
6. In each of the 3 years, they claimed deductions for interest and taxes. In addition, in 1975 they also claimed deductions for insurance, plumbing, depreciation and miscellaneous items; in 1977, they claimed additional deductions for insurance and repairs.↩
7. E.g., treating the sale of the San Jose Ave. property and the use of the proceeds to buy the 278 Chester St. property as a sec. 1031 like-kind exchange, and stating that depreciation in the year of sale is not allowable, contrary to the holding in Fribourg Nav. Co. v. Commissioner,383 U.S. 272↩ (1966).
8. On March 11, 1978, the Kaleikis transferred title to the new house to themselves and petitioners. This step was evidently taken to provide a foundation for the like-kind exchange treatment of the gain from the sale of the San Jose Ave. property in their 1977 return, dated March 18, 1978.Mr. Baxter testified that the preparer of the 1977 return recommended this for "tax defer" purposes. He testified: Q.Does this tax defer mean that you pay some tax on it or you don't pay some tax on it. A. That I don't have to pay tax on it. After receiving that advice, petitioner testified: "I went to the title company and had my name put in also on [278] Chester Street." ↩
9. Thus the real estate agent testified: Q. And at the Baxters' house was this document prepared, this Petitioners' Exhibit No. 5, known as a counter offer? A. Yes. Q. Whose ideas are reflected in that document? A. The Kaleikis are really the one who has the decision on this because the Baxters are the only one that signed it but mostly Mr. and Mrs. Baxter said that the Kaleikis are the one who have to decide on this because they are giving this as a gift. Q. Did they indicate to you they had already given it as a gift? A. No, not until they have this offer, you know, that they said they are giving all this property. That's why the Kaleikis' name is appeared in this because they are the decisioner on this property.[sic]↩